SCHRANK, Respondent, vs. PHILIBECK and another, Appellants.*

*October 15—December 23, 1947.*

* Motion for rehearing denied, with $25 costs, on February 17, 1948.

548

For the appellants there were briefs by *George Barstow* of Menominee, Michigan, and *Lehner & Lehner, Adolph P. Lehner,* and *Howard N. Lehner,* all of Oconto Falls, and oral argument by *Mr. Adolph P. Lehner* and *Mr. Barstow.*

*Emmet McCarthy* of Marinette, for the respondent.

BARLOW, J. The loss occurred in the state of Michigan, and the Michigan law applicable is contained in Act 181, Michigan Public Acts of 1919, as amended. The pertinent sections follow:

"Sec. 6. . . . no domestic animal liable to become infected with the disease or capable of communicating the same shall be permitted to enter or leave the district, premises or ground so quarantined. . . . "

"Sec. 10. No person having in his possession any domestic animal affected with any contagious, infectious or communicable disease, knowing such animal to be so affected, shall permit the same to run at large; or shall keep such animal where other domestic animals not affected by, or previously exposed to such disease, may be exposed to contagion or infection. . . ."

"Sec. 15. . . . When the commissioner shall deem it expedient to have cattle that reacted to an approved test for

Bang's disease slaughtered . . . he shall have the power to order such slaughter."

Sec. 17 prohibits the disposal or removal of such animals unless immediately slaughtered, and sec. 23 provides a penalty for violation of any of the rules or orders of the act, the material portion of which is:

". . . any person, corporation or common carrier shall be liable for all damages caused to any livestock for evasion or failure to comply with the requirements of this act."

The first question is whether there is credible evidence sufficient to sustain a finding that Bang's infection was carried to plaintiff's cattle by those of the defendant. Bang's infection, often referred to as contagious abortion or brucellosis in cattle, is a germ disease, infectious, and is communicated by contact with the germ. The germ is small, one drop containing a million germs. Both experts testified that a positive vaccinated heifer is not a spreader of Bang's disease or of the germ that would produce abortion. It seems to be generally conceded that the germs can be carried by animals, on machinery, on clothing, by drainage, and that an infected herd can infect a pasture. Plaintiff admits that in addition to operating his farm he sold and installed milking machines on other farms and that at times he worked on the milking machine on Fairland farm. He testified, however, that he always wore rubbers while so engaged and removed them when he returned to his home farm.

Defendants' expert witness testified that Bang's bacilli live four to five hours when exposed to sunlight but can live as long as one hundred twenty-one days in nutrient material. He also testified that the germ in a pregnant cow is lodged in the fine membrane surrounding the calf and that the cow becomes a spreader of the germ only when pregnancy is terminated either naturally or prematurely, and then only for an average of ten to fourteen days, but after that the germ is transferred to the

udder of the cow and contagion can only come from the udder and be communicated through milk. Plaintiff's expert witness testified that an infected animal is always a potential source of infection and can infect another cow at any and all times; that even though she herself may become immune she still would be a spreader and that once a reactor she is always a reactor.

Hence, we have two men learned in their profession in definite disagreement as to the period of time during which an infected cow can communicate the germ. Appellants argue that by reason of the various methods by which the germ can be communicated and the evidence that respondent visited several farms where there were infected cattle, and further used equipment from the Fairland farm on his farm, together with the denial of employees of the Fairland farm that milk cows from that farm ever entered respondent's premises makes any finding that this disease was communicated to respondent's cattle by the Fairland herd entirely speculative and fails to satisfy the burden of proof which respondent must assume.

The trial court had a right to assume that communication of the disease by means other than contact of an infected animal with a noninfected animal is less probable than communication of the disease by contact. The trial court, like members of this court, cannot be expected to be learned in the matters in which the expert witnesses disagree. There is testimony that the infected milk cows from the Fairland farm mingled with respondent's cattle on respondent's premises, and that in so doing they could well have communicated this disease to respondent's cattle. Appellant's cattle were quarantined on their own premises and not permitted to leave the quarantine area, under sec. 6, Act 181, Michigan Public Acts of 1919, as amended. It is considered there is sufficient credible evidence to sustain the finding of the trial court.

Appellants argue that if respondent is entitled to recover he should be limited to the loss of his herd and should not be

permitted to recover for loss of income between the period when the disease was first discovered and the last cow was slaughtered. To sustain their position appellants rely on the cases of *Page v. Sumpter* (1881), 53 Wis. 652, 11 N. W. 60, and *Gould v. Merrill R. & L. Co.* (1909) 139 Wis. 433, 121 N. W. 161. One was a case of the loss of a horse and the other the loss of a team of horses. In these cases the court said there could be no additional recovery for loss of the use of the horses. This would be true because the animals could be replaced at once. With infection in his herd respondent was not in position to replace the slaughtered cattle immediately and prevent a loss of income, because of the danger of these cattle becoming infected, causing additional loss. If he had done this and suffered additional loss appellants would undoubtedly have denied liability. The loss which he suffered ·was caused by a continuing condition created by appellants which no act of respondent could avoid. The damages allowed are for the period when respondent could not safely replace this herd, or any part of it. No damages were allowed beyond the time when the last cow was slaughtered at which time it was possible for plaintiff to replace his herd and continue his income. The damages allowed were the difference between what the herd would have produced and the cost of producing it, although this could not be established to a verity. It is certain that damages resulted and mere uncertainty as to the amount will not preclude the right to recovery even though the amount is not ascertainable with certainty and precision. Sutherland, Damages (3d ed.), p. 3009; *United States Smelting Co. v. Sisam* (8th Cir.), 191 Fed. 293; *Shepard v. Milwaukee Gas Light Co.* 15 Wis. *318, 37 L. R. A. (N. S.) 976. In *Story Parchment Co. v. Paterson Parchment Paper Co.* 282 U. S. 555, 563, 51 Sup. Ct. 248, 75 L. Ed. 544, it was held:

"Where the tort itself is of such a nature as to preclude the ascertainment of the amount of damages with certainty, . . .

it will be enough if the evidence shows the extent of the damages as a matter of just and reasonable inference, although the result be only approximate."

The damages awarded are sustained by the evidence.

The Fairland Company owned and operated several thousand acres in addition to the Nine Mile Farm. Appellant John G. Philibeck was general manager of all the Fairland farms and resided on a farm two miles from the Nine Mile Farm. Delore Francour was manager of the Nine Mile Farm, residing on it and was the herdsman in charge of the cattle. It is argued that before respondent can recover from appellants it is necessary to show negligence on their part, which respondent has failed to do. Appellants rely on *Montgomery v. Breed* (1874), 34 Wis. 649, and *Decker v. McSorley* (1901), 111 Wis. 91, 86 N. W. 554, second appeal 1903, 116 Wis. 643, 93 N. W. 803, where it was said that the liability for damages of the owner of an animal at large in violation of an ordinance or statute is a question of knowledge or intent of the owner and that plaintiff must show that the animal was at large with the knowledge and assent or permission of the owner. Respondent offered no proof that the officers of Fairland Company or Philibeck, its general manager, had any knowledge or that they consented to the cattle in question leaving the inclosure. Francour, their herdsman, had knowledge that some of the herd were entering respondent's premises at various times and that the fences were not sufficient to keep them within their inclosure.

Sec. 6, Act 181, Michigan Public Acts of 1919, as amended, prohibits permitting infected domestic animals capable of communicating Bang's disease from leaving the quarantined premises, and sec. 23 of the same act provides that any person or corporation that fails to comply with the requirements of the act shall be liable for any damages caused by such livestock. This act was passed for the purpose of preventing the spread of Bang's disease and must be interpreted in the light of the

purpose of its passage. To permit the owner of an infected herd of cattle to place them in charge of an irresponsible herdsman and thus avoid responsibility would defeat its purpose. When the legislature provided that any person, corporation, or common carrier shall be liable for damages caused to any livestock on their failure to comply with the requirements of the act, it clearly intended to place liability for damages on the owner of the herd when he violated the provisions of the act. To hold otherwise would give the act no force and effect.

This action was tried to the court September 22, 1946, and a memorandum of decision in favor of plaintiff filed September 25, 1946, wherein it was provided:

"Formal findings consistent with this decision shall be prepared by plaintiff's attorney and submitted to defendants' counsel."

Formal findings were not signed by the judge and filed with the clerk of court until April 26, 1947. Notice of taxation of costs was then served, and objections to taxation filed. Costs were taxed by the clerk and the taxation reviewed by the court. The taxation was sustained. Appellants contend respondent is precluded from taxing costs by virtue of sec. 270.66, Wis. Stats., which provides:

"Whenever a finding or verdict shall be filed the successful party shall perfect the judgment and cause it to be entered within sixty days after such filing and if he fails so to do the clerk of the court shall prepare and enter the proper judgment, but without costs to either party. . . ."

Appellants rely on *McDonough v. Milwaukee & Northern R. Co.* (1887) 69 Wis. 358, 34 N. W. 120, and *Milwaukee M. & B. Asso. v. Niezerowski* (1897), 95 Wis. 129, 70 N. W. 166. In the first case the court granted a nonsuit at the close of plaintiff's testimony, and in the second case there was a directed verdict. Nothing more was required to be done by the court to permit the entry of judgment and it was properly held

the statute applied. This case is ruled by *Jenks v. Allen* (1913), 151 Wis. 625, 139 N. W. 433. The judicial duty was not completed until findings were made and filed, and under the statute the prevailing party has sixty days from that time in which to enter judgment and tax his costs. Judgment was entered and costs taxed within that period.

*By the Court.*—Judgment affirmed.