W. G. SLUGG SEED & FERTILIZER, INC., Plaintiff and Respondent, v. PAULSEN LUMBER, INC., Defendant and Appellant: POLZAR, Third-Party Defendant.*

*No. 163. Submitted under sec. (Rule) 251.54 January 4, 1974.—Decided February 5, 1974.*
(Also reported in 214 N. W. 2d 413.)

* Motion for rehearing denied, with costs, on April 2, 1974.

The cause was submitted for the appellant on the briefs of *Richard L. Novotny*, attorney, and *Ronald L. Piette* of counsel, both of Milwaukee, and for the respondent on the brief of *Cook & Franke, S. C.*, attorneys, and *Terence T. Evans* and *Thomas J. Drought* of counsel, all of Milwaukee.

HALLOWS, C. J. The issues on appeal involve the proper measure of damages and the correctness of the instructions given to the jury. Slugg operated an agricultural and garden-supply business out of a warehouse in the city of Milwaukee. In September, 1967, it decided to build a new warehouse on the same location and entered into a contract with Paulsen to construct a cinder-block combination warehouse and office building for $119,500 in a workmanlike manner, according to plans, accepted trade-practices, and code restrictions. Slugg paid Paulsen $102,461, which when various extra costs

were figured in, left a balance due under the contract of $18,417.46. Construction commenced in November, 1967, and by September, 1968, Slugg substantially occupied the warehouse and by March, 1969, it had taken over the building.

However, Slugg claimed defects existed in the building and so notified Paulsen in a letter, dated May 28, 1969, wherein some 20 defects were listed caused by poor workmanship or disregard of the plans. Three important defects consisted in the failure to install a fifth truss in the roof, failure to construct a five-inch concrete floor over a layer of woven-wire mesh over six inches of gravel as called for by the contract, and failure to build the roof to specifications. After negotiations between Slugg and Paulsen, Computerized Structural Design (CSD) was engaged to make a report of the defects in the building and to draw plans for their correction. Paulsen agreed Slugg should make these corrections at Paulsen's expense and Dahlman Construction Company was a low bidder at $15,500. This bid did not include remedying the missing fifth roof truss or conforming the roof and the floors to contract specifications. During the course of the repair work, the warehouse was completely destroyed by fire. The warehouse had been insured for the contract price of $119,500. At the time of the fire, Dahlman had performed services amounting to $9,125.69 and the bill of CSD for engineering services for the corrective work was $2,527.28.

This case presents the typical situation where a building contract is substantially performed but the building contains defects which constitute a breach of the contract. In such cases many defects can be repaired at no economic waste and while it might cost slightly more to repair the defects than it would have cost to construct the building properly in the first place, the cost of the repair normally is a proper measure of damages. Here,

it is stipulated that certain defects could be repaired at the cost of $15,500 plus the engineering fees, and it was agreed between the parties that this should be done; however, there were three important defects concerning which the evidence of the cost of repair in relation to the increased value was in dispute. There was evidence by Slugg to the effect that the missing truss and the defective roof and floor would cost more to remedy so as to achieve strict compliance with the contract than the economic value of the building would increase as a result thereof. Paulsen introduced evidence at the trial that two of these defects, the roof and the floor, could economically be remedied. Slugg's expert witness testified that the value of the building as constructed was $45,000 less than if the building had conformed to the plans and specifications and if the repairs of the items, which the parties agreed should be repaired at a cost of $15,500, were made the building would be worth $40,000 less than the contract price. This witness did not allocate any portion of the $40,000 diminished value to the three separate major defects.

On this state of evidence, Slugg asked for a special verdict including an instruction on what sum of money represented the reasonable cost of remedying the defects which could be repaired or replaced without economic waste. This was to be answered by the court at $18,027.28, which sum represented the stipulated cost of the repairs plus the engineering fees. Another inquiry asked what sum of money represented the diminished value of the building as built compared to the value the building would have had if built in accordance with the contract. The giving of both of these instructions would have resulted in duplication with the possibility of overlap. No argument is made that the $15,500 cost of repairs based on the testimony of Slugg's witness would only increase the value of the building by $5,000.

This fact may have been in the court's mind in giving only the instruction of diminished value. The court rejected the instructions and gave only an instruction on diminished value as the measure of damages. Paulsen argues the giving of only an instruction on the diminished value rule was error because (1) Slugg had failed to lay a foundation for the instruction, and (2) allowed recovery for items which had been shown were repairable at a small cost. The basis of Paulsen's argument is that, when repairs can economically be made, those repairs must fall under the cost of repair rule and cannot be included in the diminished value rule. Under this view, only those repairs or corrections which are economically unfeasible to make can be included in the diminished value rule.

It would have been preferable if the question of damages had been submitted to the jury on a special verdict which applied the cost of repair rule to those items the parties had agreed could be repaired at a reasonable cost and applied the diminished value rule to the three defects which were not so repairable. This view, of course, assumes the jury would disregard the evidence of Paulsen that two of these defects were economically repairable. The pinpoint issue is whether the trial court must give instructions on both rules when they are applicable to the facts or whether the court can apply only the diminished value rule to avoid confusing the jury. Whether or not both rules should be submitted to the jury is a question for the court to decide.

The general rules respecting the measure of damages for defects in the performance of building contracts have been stated many times and are not in dispute. Where there is a breach of the contract, the law attempts to give the parties to the contract exactly what they contracted for or if this is not possible or feasible, then its equivalent in money. Generally, the measure of damages

is the cost of correcting the defect or completing the omission and with this money, the aggrieved party can specifically correct the defects and supply the omissions. This measure of damages is practical and attains the desired result only when the correction or completion does not involve unreasonable destruction of the work done so that the cost of corrections is not materially disproportionate to the value of the corrections. If reconstruction and completion in accordance with the contract involves unreasonable economic waste, then the rule as to those defects at least is the difference between the value the building would have had if properly constructed and the value that the building does have as constructed. 13 Am. Jur. 2d, *Building and Construction Contracts*, pp. 79, 80, sec. 79; Restatement, *Contracts*, pp. 572, 573, sec. 346; Anno., *Construction Contract—Breach—Damages*, 76 A. L. R. 2d 805, 810, 815, secs. 3 and 4; Calamari and Perillo, *The Law of Contracts*, pp. 362, 364, sec. 230 (1970); 5 Corbin, *Contracts*, p. 493, sec. 1090; McCormick, *Law of Damages*, pp. 647, 650, sec. 168 (1935). In Wisconsin the rule is succinctly stated in *Ashland Lime, Salt & Cement Co. v. Shores* (1899), 105 Wis. 122, 133, 134, 81 N. W. 136:

"(b) The proper rule for measuring recoverable difference between substantial and complete performance of a building contract is not necessarily the cost of tearing down the defective work and rebuilding it so as to conform to the contract. It is the reasonable cost of remedying defects, so far as that can be done practicably, and the diminished value of the building so completed because of defects not so remediable."

This rule was followed in *Sherry v. Madler* (1905), 123 Wis. 621, 627, 101 N. W. 1095, and in *Manning v. School District No. 6* (1905), 124 Wis. 84, 100, 101, 102 N. W. 356, and in *Foeller v. Heintz* (1908), 137 Wis. 169, 180, 181, 118 N. W. 543. In *Buchholz v. Rosenberg* (1916),

163 Wis. 312, 314, 315, 156 N. W. 946, the rule was phrased as follows:

"If the defect can be remedied without reconstructing a substantial part of the building or, as otherwise expressed, without great sacrifice of work and material already wrought into the building, the reasonable cost of correcting the defect should be allowed; if otherwise, the diminished value of the building, on the basis of the contract price, by reason of the defect. . . ."

These cases give priority to the cost of repair rule when those items are repairable without economic waste and to the diminished value rule as a secondary rule to cover those defects, the correction of which would involve economic waste. In *Plante v. Jacobs* (1960), 10 Wis. 2d 567, 103 N. W. 2d 296, the court pointed out that *Mohs v. Quarton* (1950), 257 Wis. 544, 44 N. W. 2d 580, required that when the separation of the defects would lead to confusion the rule of diminished value could apply to all defects. In *J. G. Jansen, Inc. v. Rilling* (1931), 203 Wis. 193, 200, 201, 232 N. W. 887, we stated:

"Whether the facts in a particular controversy justify the application of the rule of damages permitting recovery for the amount of the reasonable expense of remedying the defects, or whether the facts are such as to require the application of the 'diminished value' rule, or whether the facts in a given case require the application of both branches of the rule of damages to different items of dispute, is ordinarily a question to be determined by the trial court from all of the facts and circumstances in the particular case, subject always, however, to a review by this court. No hard-and-fast rules can be laid down as to whether in a given case the first branch of the rule or the second branch of the rule shall be applied."

We find no error in the trial court's giving only the instruction on the diminished value rule.

Paulsen claims error because the court did not grant its motion after verdict for Slugg's damages only in the

amount of $12,156.97. This amount consisted of $9,125.69, the cost of repairs done prior to the fire, and $2,527.28 the engineering bill, plus $504 for heat loss occasioned by the material difference in the roof construction, for three and a quarter years during which Slugg occupied the building prior to the fire. Paulsen argues the diminished value is based upon speculation because the building is now destroyed. While the briefs do not bring out this argument in full detail, it is based upon the premise that the warehouse was insured for the contract price of $119,500 and that Wisconsin has a full valued policy law which requires the payment of the face value of the policy when a building is totally destroyed. Paulsen argues Slugg will receive from the fire insurance proceeds the value the building would have had if properly constructed; consequently, the only damages suffered by Slugg are his out-of-pocket expenses for making repairs up to the time of the fire, the engineering fees, and the value of the heat loss. There is no merit to this argument as a rule of damages. We do not decide what amount of recovery Slugg is entitled to under its insurance policy. But, in any event, Paulsen is not entitled to the benefits of any insurance money as a collateral source to reduce its liability. Paulsen's liability is determined as of the day of the breach, not by a later fortuitous collateral recovery by Slugg from a third party. On the date Paulsen turned over the defective building, it was responsible for not properly performing the contract. The jury found its liability to be $39,250 and we see no reason to disturb this award.

Slugg, in its notice of review, seeks a reversal of the order denying its motion for interest on the jury verdict from April 1, 1968. Slugg argues the claim was liquidated as of that date; the trial court disagreed and correctly so. Simple interest is recoverable as damages for nonpayment of a liquidated debt from the date of breach,

but the claim must be a liquidated one. 5 Corbin, *Contracts* (1964), pp. 280, 281, sec. 1046; 11 Williston, *Contracts* (3d ed. 1968), pp. 621, 630, sec. 1413; McCormick, *Handbook on the Law of Damages* (1935), pp. 213, 224, secs. 54, 56; *Necedah Mfg. Corp. v. Juneau County* (1932), 206 Wis. 316, 237 N. W. 277, 240 N. W. 405. Just recently this court stated in *Bigley v. Brandau* (1973), 57 Wis. 2d 198, 208, 203 N. W. 2d 735, that in order to recover interest there must be a fixed and determinate amount which could have been tendered and interest thereby stopped. The amount of the claim must be known or readily determined.

Here, the cost of remedying the defects which could be remedied was not determined until a bid was accepted from Dahlman Construction Company for $15,500. The balance of the claim for diminished value was not determined or determinative except by a finder of the fact. The claim for interest must have been an afterthought since Slugg in its complaint of September 26, 1969, did not consider damages liquidated because it prayed for box-car figures of damages in the amount of $250,000. It was not until January 4, 1971, that CSD submitted plans and specifications for correcting the repairable defects. This amount cannot retroactively be said to have been liquidated as of April 1, 1968. We conclude the trial court was correct. We find no merit in Slugg's claim for interest based upon a liquidated debt.

*By the Court.*—Judgment affirmed.