Joseph KIM, as assignee of Young S. Kim and Su M. Kim, Plaintiff-Respondent-Petitioner,

v.

AMERICAN FAMILY MUTUAL INSURANCE COMPANY and Jennifer A. Olcott, Defendants-Appellants.

Supreme Court

*No. 92-0910. Oral argument May 26, 1993.—Decided June 16, 1993.*

(Also reported in 501 N.W.2d 24.)

For the plaintiff-respondent-petitioner there were briefs by *Wilbur W. Warren, III, M. Lee Leppanen* and *Warren Law Office, S.C.,* Kenosha and oral argument by *Wilbur W. Warren.*

For the defendants-appellants there was a brief by *Richard L. Zaffiro,* Racine and oral argument by *Richard L. Zaffiro.*

SHIRLEY S. ABRAHAMSON, J. This is a review of a published decision of the court of appeals, *Kim v. American Family Mutual Ins. Co.,* 170 Wis. 2d 725, 489 N.W.2d 725 (Ct. App. 1992), reversing part of a judgment of the circuit court for Kenosha county, Bruce E. Schroeder, Circuit Judge. The portion of the judg-

ment reversed awarded Joseph Kim, the plaintiff, compensation for the loss of use of his car, which was destroyed in a collision with a car operated by Jennifer A. Olcott, the defendant, though the plaintiff had not expended funds for a replacement vehicle because he could not afford to do so.

The sole question presented is whether a claimant who does not acquire a temporary replacement vehicle may recover damages from a tortfeasor for loss of the use of a vehicle. We conclude that the claimant who does not acquire a temporary replacement vehicle may recover damages from a tortfeasor for loss of the use of a vehicle. Accordingly we reverse the decision of the court of appeals.

## I.

The facts in this case are undisputed. On May 31, 1991, the plaintiff's 1983 Oldsmobile was destroyed in a collision with a car driven by American Family's insured, Jennifer Olcott, the defendant, who is insured by American Family. The plaintiff's car was insured for liability only, and he sought compensation from American Family for the damage to his vehicle and the loss of its use. When the parties could not agree on the amount American Family should pay him, the plaintiff commenced this action. The circuit court found the defendant 100% causally negligent and awarded the plaintiff $5,500 as the replacement value for his car. This part of the judgment is not at issue on appeal.

The plaintiff also sought damages for the loss of use of the car although he conceded that he had not procured or rented a replacement vehicle. The circuit court

awarded the plaintiff $3,750 for the loss of the use of the car.[1]

American Family appealed this part of the circuit court's judgment, asserting that because the plaintiff had not actually expended any money for a replacement vehicle he was not entitled to damages for loss of use of the car.

Relying on *Nashban Barrel & Container Co. v. G.G. Parsons Trucking Co.*, 49 Wis. 2d 591, 182 N.W.2d 448 (1971), the court of appeals reversed that part of the judgment granting the plaintiff compensation for loss of the use of the car. We reverse the decision of the court of appeals.

## II.

The sole question presented is whether a claimant who does not acquire a temporary replacement vehicle may recover damages from a tortfeasor for loss of the use of a vehicle. This question presents an issue of law which we determine independently of the decisions of the circuit court or court of appeals.

The court of appeals and the parties agree that *Nashban Barrel & Container Co. v. G.G. Parsons Trucking Co.*, 49 Wis. 2d 591, 182 N.W.2d 448 (1971), is the seminal case on the right to recover damages for loss of use of a vehicle. *Nashban* arose out of a motor vehicle accident in which the Nashban Barrel Company's tractor-trailer truck was seriously damaged. The vehicle was unusual in that its height and rear opening were larger

---

[1] The parties stipulated that, if the court held that the plaintiff was entitled to damages for loss of the use of the car, the damages should be computed at the rate of $15 per day from the date of the accident until the date the plaintiff was compensated for the damage to the car.

than those of the standard tractor-trailer. This unusual size made it difficult for the Nashban Barrel Company to obtain a replacement. Melvin Nashban, the company president, rented a trailer to use in his business while he looked for a replacement for the damaged trailer. The company sought compensation for the rental of the replacement trailer from the tortfeasor's insurer. As the court of appeals stated, the focus of the *Nashban* case was whether the court should recognize "loss of use" damages when the vehicle could not be repaired.

The *Nashban* court began its analysis by noting that prior Wisconsin cases had awarded damages for the loss of use of property in other situations: *Wright v. Mulvaney*, 78 Wis. 89, 46 N.W. 1045 (1890) (awarding loss of use damages for damage to commercial fishing net); *Gould v. Merrill Railway & Lighting Co.*, 139 Wis. 433, 121 N.W. 161 (1909) (awarding loss of use damages for injury to horses used in business), and *Schwalbach v. Antigo Electric & Gas, Inc.*, 27 Wis. 2d 651, 135 N.W.2d 263 (1965) (awarding loss of use damages for total destruction of house by defective furnace). The court noted, however, that the parties had not cited these cases and had relied instead on an ALR Annotation, entitled *Recovery for Loss of Use of Motor Vehicle Damaged or Destroyed*, 18 A.L.R.3d 497 (1968). The court observed that, according to the Annotation, several jurisdictions deny recovery for loss of use when the damaged property cannot be repaired, while other jurisdictions permit such recovery. After summarizing the cases, the *Nashban* court adopted "the modern view allowing recovery for loss of use in addition to total damages, even when the vehicle is not repairable." The standard the court applied to recovery for the loss of use was "that of reasonableness under all the circumstances of the particular case." 49 Wis. 2d at 601.

Had the *Nashban* court stopped there, the dispute in the case at bar probably would not have arisen. The *Nashban* court went on, however, to state that "damages should be allowed for loss of use . . . in an amount equal to that which was actually expended *(absent a showing that a temporary replacement was unavailable)* provided such amount was not unreasonable." 49 Wis. 2d at 601–02 (emphasis added).[2] The *Nashban* court did not explain what it meant by "unavailable." It is this language about unavailability of a temporary replacement upon which the parties and the court of appeals have focused.

The court of appeals relied not only on the word unavailable but also on the *Nashban* court's analysis of cases from other jurisdictions involving the amount of damages recoverable for loss of use of a vehicle. The *Nashban* court observed that "while it might be expected that most courts require some showing of the necessity for renting a replacement vehicle, several courts *surprisingly* do not require an actual rental, while other courts have required a showing of unavailability in the absence of an actual rental." 49 Wis. 2d at 601 (emphasis added).

According to American Family and the court of appeals, the word "surprisingly," demonstrates that the *Nashban* court rejected those cases permitting damages for loss of use when no expenditure for a replacement vehicle was made. Thus the court of appeals interpreted

---

[2] " . . . damages should be allowed for loss of use 1) during a *time period* reasonably required for replacement, including a reasonable time to determine whether the vehicle is in fact repairable, and 2) in an amount equal to that which was actually expended (absent a showing that a temporary replacement was unavailable) provided such an amount was not unreasonable." 49 Wis. 2d at 601–602 (emphasis in original).

*Nashban* as holding that damages for the loss of use of a vehicle would be allowed when a replacement vehicle was physically unavailable within a reasonable market; otherwise damages for loss of use would be allowed only when a claimant had made a reasonable expenditure for a replacement vehicle.

The court of appeals interpreted the *Nashban* case in this manner because it concluded that "[w]hen adopting the new rule recognizing such damages, the court had the option of choosing language which would have accommodated the very situation presented here—no actual rental or expenditure. It did not." 170 Wis. 2d at 729.

We decline to read so much into the *Nashban* court's use of the words "unavailable" and "surprisingly" in its discussions of the amount of damages available for loss of use. As a practical matter a court cannot anticipate every factual scenario that could be presented in determining how to phrase an opinion. The fact situation presented in this case was not presented or addressed in the *Nashban* case. Thus there is no reason to conclude that the *Nashban* court intended "unavailable" to be limited to physical unavailability. Furthermore we do not believe that the *Nashban* court intended its discussion about the measure of damages to narrow its holding that damages for loss of use are recoverable where reasonable under all the circumstances. 49 Wis. 2d at 601.

American Family asserts that the jury instructions on loss of use support the court of appeals' interpretation of *Nashban* by limiting compensation for the loss of use of a vehicle to the amount actually expended or incurred for a temporary replacement. Although the judicial system is aided enormously by the work of the Wisconsin Civil Jury Instructions Committee, this court is not

896

bound by that Committee's legal interpretations. Moreover, we do not read the instruction as having this limiting effect. Wis. J.I.—Civil 1801, *Property: Loss of Use of Automobile Which is Not Repairable,* instructs juries to "name such sum as will reasonably compensate ([the] plaintiff) for the loss of use" of an automobile. The instruction further advises jurors that they "may consider the reasonable rental value of a comparable automobile during the period of time reasonably necessary to obtain a comparable permanent replacement . . . but the rental may not exceed the amount actually expended or incurred for a temporary replacement." [3]

Contrary to American Family's assertion, the instruction does not condition the availability of damages on actual expenditures. Rather, the instruction repeats the general rule that claimants should receive the sum that reasonably compensates them for their losses. It limits the amount of damages awarded to actual

---

[3] The full text provides:

If you find that, as a natural consequence of the collision, *(plaintiff)* has necessarily been deprived of the use of (his) (her) automobile, then you should, in your answer to this question, name such sum as you find will reasonably compensate *(plaintiff)* for such loss of use.

You may consider the reasonable rental value of a comparable automobile during the period of time reasonably necessary to obtain a comparable permanent replacement (including such time as was reasonably necessary to determine whether the damaged automobile could be repaired), but the rental may not exceed the amount actually expended or incurred for a temporary replacement.

Wis. J.I.—Civil 1800, *Property: Loss of Use of Automobile Which is Repairable,* is identical except that it discusses the time "reasonably necessary for the repair (or in determining whether or not the damaged auto is repairable)."

expenditures only in those cases in which reasonable actual expenditures have been made.

While no Wisconsin case has addressed the issue presented in the case at bar, several jurisdictions have concluded that a claimant may recover for the loss of use of a vehicle when the claimant has not procured a replacement.[4] These cases apply the general rules of damages: The legal system attempts to place the injured party in as good a position as he or she would have been in had the tortious conduct not occurred and damages naturally and proximately caused by a tort are recoverable. Even though money damages for the cost of repairs or diminution of value of the personal property will be awarded, repairing or replacing the property may take time. Accordingly courts award claimants damages to make up for the loss of use of the property, a natural and proximate consequence of the tortious conduct. Allowing recovery for the loss of use of a vehicle puts the claimants in a position equivalent to that which they would have been in had the tortious conduct not occurred.

---

[4] *See, e.g., Chesapeake & O. Ry Co. v. Boren,* 202 Ky. 348, 259 S.W. 711, 715 (Ct. App. 1924) (upholding jury award of damages for loss of use "even though the evidence tended to show that the reason plaintiff had been unable to procure another [car] during this period was due to her inability to pay for same"); *Camaraza v. Bellavia Buick Corp.,* 216 N.J. Super. 263, 523 A.2d 669, 671 (1987) (claimant "should not be barred from recovery for loss of use of an automobile simply because he has not rented a substitute vehicle"); *Holmes v. Raffo,* 60 Wash. 2d 421, 374 P.2d 536 (1962) ("the right to compensation for loss of use is not dependent upon the owner having hired a substitute automobile").

*Camaraza v. Bellavia Buick Corp.,* 216 N.J. Super. 263, 523 A.2d 669, 672 (1987), characterized the jurisdictions awarding damages for the loss of use when no replacement vehicle was procured as constituting the "overwhelming weight of authority."

Although a claimant who does not procure a replacement for a vehicle destroyed by a tortfeasor "does not incur pecuniary loss in the form of rental payments for a substitute vehicle, the claimant may suffer substantial personal inconvenience due to the lack of an automobile. He may be forced to walk to work or to take inconvenient public transportation. He may be prevented from engaging in normal recreational pursuits or his enjoyment of those pursuits may be diminished." *Camaraza v. Bellavia Buick Co.*, 523 A.2d 669 (N.J. Super. 1987).[5]

As the *Nashban* court concluded, loss of use is not dependent on a claimant's having procured a replacement. The *Nashban* case makes this point very clearly by allowing recovery of damages for loss of use when a replacement vehicle is unavailable. Whether a replacement vehicle is unavailable or a claimant does not choose to procure a replacement, the claimant suffers the loss of the use of the vehicle.

The *Nashban* court declined to condition recovery of damages for the loss of use of a vehicle on the distinction between a vehicle that could be repaired and one that could not. "In what manner," the Nashban court asked, "can we justify the recognition of loss of use as a property right incidental to ownership in one instance and not the other? Have not both property owners lost the same thing, i.e., the use of such property? To hold to the contrary would be to effectuate a legal principle without a valid reason." 49 Wis. 2d at 599 (quoting *New*

---

[5] *See also* Brownstein, *What's the Use? A Doctrinal and Policy Critique of the Measurement of Loss of Use Damages*, 37 Rutgers L. Rev. 433, 538 n. 285 (1985), noting that a family car is the chattel most likely to produce a substantial injury if unavailable for use.

*York Central R.R. v. Churchill,* 218 N.E.2d 372, 276 (Ind. App. 1966)). The same policy considerations apply in this case. To grant recovery for loss of use only to those claimants who actually incurred expenses in procuring replacement vehicles would be to "effectuate a legal principle without a valid reason." The reason a claimant does not procure a replacement vehicle does not change the nature of the claimant's loss of use of the vehicle. Accordingly we conclude that a claimant is who does not procure a replacement vehicle may recover damages for loss of the use of the vehicle destroyed by a tortfeasor.

As the *Nashban* court recognized, the amount a claimant spends to replace a vehicle is a convenient measure of the value to the plaintiff of the vehicle's use. 49 Wis. 2d at 600-01; *see also* Alan E. Brownstein, *What's the Use? A Doctrinal and Policy Critique of the Measurement of Loss of Use Damages,* 37 Rutgers L. Rev. 433, 446 (1985) ("the actual hiring of a replacement both sets an ascertainable limit on the value of that use and corroborates the owner's claim of the use's value"). When a claimant does not procure a replacement vehicle, it is more difficult to place a monetary value upon the value of the use of the car to the claimant. Nevertheless the claimant is entitled to receive as damages such sum as will compensate for the loss of use of the vehicle.

For the reasons set forth, we reverse the decision of the court of appeals, thereby affirming the judgment of the circuit court.

*By the Court.*—The decision of the court of appeals is reversed.