Wayne F. SCHRUBBE, Plaintiff-Appellant,†

v.

PENINSULA VETERINARY SERVICE, INC., Defendant-Respondent.

Court of Appeals

*No. 95–2982. Oral argument June 24, 1996.—Decided July 30, 1996.*

(Also reported in 552 N.W.2d 634.)

†Petition to review denied.

For the plaintiff-appellant the cause was submitted on the briefs of *George Burnett* of *Liebmann, Conway, Olejniczak & Jerry, S.C.*, Green Bay.

For the defendant-respondent the cause was submitted on the brief of *Mark A. Pennow* and *Beth Rahmig Pless* of *Denissen, Kranzush, Mahoney & Ewald, S.C.*, Green Bay.

Before Cane, P.J., LaRocque and Myse, JJ.

MYSE, J.   Wayne Schrubbe appeals an order granting Peninsula Veterinary Service, Inc.'s, motion for declaratory judgment on the proper measure of damages.[1] The trial court declared that the appropriate measure of damages for the death of Schrubbe's dairy calves was the market replacement value on their date of death, less any salvage value. Schrubbe contends that because he was financially unable to replace the calves on the date of their death, he is entitled to recover for anticipated lost milk profits the calves ultimately would have produced. Because we

---

[1] We granted leave to appeal this nonfinal order on November 17, 1995.

conclude that Schrubbe is not entitled to recover for anticipated lost milk profits, the order is affirmed.

Schrubbe, a dairy farmer in Door County, sued Peninsula for negligently causing the death of several of his dairy calves. Between 1988 and 1989, fifteen of Schrubbe's calves died within several days of their birth from "white muscle disease," allegedly caused by a selenium deficiency. According to Schrubbe, he sought treatment of the calves from Peninsula, but Peninsula negligently failed to diagnose the problem. Schrubbe alleges that Peninsula should have analyzed the herd's feed and performed appropriate laboratory tests because Door County is low in naturally-produced selenium.

According to Schrubbe, the loss of the calves was the direct cause of his farm's decline in milk production over the following several years. Schrubbe suffered a loss in milk production because he was unable to nurture the calves to adult milk production to replace poor producing and older cows in his herd. Schrubbe claims that he was unable to replace the calves because of his financial condition.

Prior to trial, Peninsula sought declaratory judgment that the appropriate measure of damages was limited to the fair market replacement value of the calves at the time of their death, less any salvage value. Schrubbe contended that he was also entitled to recover damages for anticipated lost milk profits from the death of the calves. The trial court granted Peninsula's motion for declaratory judgment.

The proper measure of damages applicable to a specific claim presents a question of law. *Hills Bros. Coffee, Inc. v. Dairyland Transp., Inc.*, 157 Wis. 2d 645, 648, 460 N.W.2d 433, 434 (Ct. App. 1990). Thus, we

review this issue without deference to the trial court. *Ball v. District No. 4, Area Bd.*, 117 Wis. 2d 529, 537, 345 N.W.2d 389, 394 (1984).

The rules for measuring damages for loss of personal property are governed by a variety of concepts that attempt to make the owner whole for the loss sustained as a result of another's negligence. Economic concepts, however, limit the make whole doctrine in order to minimize damages and avoid economic waste. *See W.G. Slugg Seed & Fertilizer, Inc. v. Paulsen Lumber, Inc.*, 62 Wis. 2d 220, 225-26, 214 N.W.2d 413, 416 (1974); DAN B. DOBBS, HANDBOOK ON THE LAW OF REMEDIES 188 (1973). Therefore, within this framework, we address the proper measure of damages for the loss of newborn calves that would mature into replacement cows for a dairy farm.

"[T]he basic measure of damages for the destruction of livestock is the animal's market value, determined by replacement cost, with an appropriate reduction for any salvage value." *Rosche v. Wayne Feed Div.*, 152 Wis. 2d 78, 82-83, 447 N.W.2d 94, 96 (Ct. App. 1989). Although *Rosche* dealt with the death of pigs, the court specifically addressed the issue whether the owner was entitled to damages for the loss of their offspring anticipated at the time of their death. The court disallowed damages for the loss of future offspring and limited the damages to the replacement cost at the time of their death less any salvage value.[2] *Id.* at 83, 447 N.W.2d at 96.

---

[2] We do not address the issue whether the market value of the calves should be calculated as of the date it was reasonable to replace the deceased calves. It could be argued that the market value of Schrubbe's calves should be calculated at the time it was reasonable to replace them, less the costs to raise the calves

The reasons underlying this general rule of damages are at least threefold. First, the market value of replacement animals is based in part upon their expected future productivity. Because future productivity is considered in assessing market value of livestock, additional recovery for the expected future productivity of the livestock would duplicate damages. *Id.* Once the owner acquires a replacement animal, the loss of future productivity is eliminated. If future productivity were allowed together with the replacement cost, the owner would be twice compensated for the future productivity of the animal.

The measure of damages stated in *Rosche* is also designed to minimize damages and avoid economic waste. This rule excludes recovery for damages that should have been avoided and deemed economically wasteful. By acquiring replacement animals, livestock productivity will be maintained and the damages measured in a way that will not exceed the economic potential of the lost property.

Finally, the rule of damages enunciated in *Rosche* reflects the fact that an animal's value is readily ascertainable and its replacement is readily available in the market. The parties agree that calves of any sex and any age are readily available in a competitive market so that the animal's true value can be easily ascertained at any developmental stage. The ability to

to that point. *See Strauss Bros. Packing Co. v. American Ins. Co.*, 98 Wis. 2d 706, 709, 298 N.W.2d 108, 110 (Ct. App. 1980). Because that issue was not raised in this case and because neither party contends that there is anything other than a nominal difference in the market value of the calves between date of death and the time reasonably necessary to acquire replacement calves in the market, we do not address this issue.

acquire a comparable animal is unrestricted by considerations of scarcity, delay in acquisition of a replacement, or problems in identifying the market where replacement animals can be acquired.

We recognize that the rule of damages reflected by *Rosche* is limited to livestock that is not producing income at the time of the loss. If Schrubbe lost milk producing cows, some amount of milk production would be lost from the time of death to the time it was reasonable to replace the cows. Although the time to replace may be brief because of the availability of comparable animals in the market, the owner nonetheless would be entitled to the loss of use of the animal during the reasonable time necessary to replace it. *See Schrank v. Philibeck*, 251 Wis. 546, 552, 30 N.W.2d 233, 236 (1947); THE LAW OF DAMAGES IN WISCONSIN § 17.26 (1994). However, because Schrubbe's calves were not producing income at the time of their death, it is inappropriate to evaluate any loss of use of these calves. The calves would produce no income during the rather short time reasonably necessary to replace the livestock in the readily accessible market. Except for any additional cost attributable to acquiring an animal slightly older than the lost animal, which may in large part be offset by the cost of feeding and maintaining the animal during this period, there is no loss of use connected with nonproducing livestock.

Schrubbe contends, however, that his financial condition precluded his acquisition of replacement animals. He argues that because he was economically unable to afford the relatively modest cost of replacing the young calves he lost, Peninsula is responsible not only for the value of the animals lost, but for all milk production that would have been produced in the future but for their deaths. Schrubbe argues that only

by compensating him for this lost milk production can he be made whole.

We reject Schrubbe's contention for the following reasons. First, as in *Rosche*, the market value of the calves includes the fact that they will ultimately produce milk. If the calves had been replaced with calves of the proper age there would be no loss of future milk profits. Therefore, awarding both the value of the calves and loss of future milk profits would duplicate damages.

More importantly, Schrubbe cites no cases supporting his argument that the rule of damages varies based upon the personal wealth of the injured plaintiff. Indeed, the general rule is that damages are measured the same without regard to the plaintiff's wealth. DOBBS, *supra* at 188. We do agree, however, that when the measure of damages includes the calculation of a reasonable time to replace, the plaintiff's ability to pay may be a factor in determining the reasonableness of the time to replace. *See Nashban Barrel & Container Co. v. G.G. Parsons Trucking Co.*, 49 Wis. 2d 591, 601-02, 182 N.W.2d 448, 453 (1971). However, as previously discussed, it is inappropriate to evaluate the reasonable time to replace for a loss of use determination because the calves were not producing income at the time of their death. Schrubbe would not suffer loss of use of the calves in the brief period necessary to acquire replacement calves in the market. Because the measure of damages in this case does not include a reasonableness determination, Schrubbe's wealth is not a proper consideration.

Further, Schrubbe contends that he is entitled to recover for lost milk production from the time the

calves would have become milk producers through the date of judgment. Because Schrubbe's calves were lost in 1988 and 1989 and the calves would have become milk producers at approximately the age of two years, Schrubbe is seeking lost milk profits for a period of several years. While he does not demand compensation for the future offspring of the lost calves, we see no logical reason why his proposed measure of damages would exclude the future offspring and even future milk profits of the offspring. Such a damage claim far exceeds the value of the calves at the time of their death. With no logical stopping point, a defendant would be held responsible for almost limitless multiplication of damages that would follow from the measure of damages Schrubbe suggests. Public policy precludes a measure of damages that involves costs that are grossly disproportionate to the negligence of the defendant and the amount of loss inflicted at the time of the negligent act. *See Bowen v. Lumbermens Mut. Cas. Co.*, 183 Wis. 2d 627, 655-56, 517 N.W.2d 432, 444 (1994). Based upon the economic waste attributable to such a measure of damages and the fact that there is no logical stopping point for measuring such damages in livestock with an almost limitless reproduction cycle, we reject Schrubbe's contention that he is entitled to the loss of future milk production.

■ Finally, Schrubbe argues that *Kim v. American Family Mut. Ins. Co.*, 176 Wis. 2d 890, 501 N.W.2d 24 (1993), compels a different result. We disagree. *Kim* held that a plaintiff whose automobile was damaged is entitled to the reasonable value of the loss of use even though he did not acquire a temporary replacement vehicle. *Id.* at 893, 501 N.W.2d at 24. *Kim* does not stand for the proposition urged by Schrubbe that the

financial circumstances of each individual plaintiff must be examined before a rule of damages can be applied. Under the proper measure of damages, when a motor vehicle is damaged, the owner of the vehicle is entitled to loss of use of the motor vehicle for a reasonable period of time necessary to repair the vehicle or obtain a comparable permanent replacement. *Id.* at 895-96, 501 N.W.2d at 25. This measure of damages is available to all persons who suffer the loss of a motor vehicle without regard to whether a temporary replacement vehicle was obtained and without regard to the reasons a temporary replacement vehicle may not have been obtained. *Id.* Because *Kim* involved a motor vehicle that was being used at the time it was damaged and therefore a different rule of damages applied, we conclude that *Kim* is inapposite to our analysis.

Because Schrubbe's calves were not producing milk at the time of their death, we conclude that Schrubbe is not entitled to anticipated lost milk profits for the loss of the calves. Therefore, we affirm the order.

*By the Court.*—Order affirmed.

CANE, P.J. (*concurring*). I concur with the majority's ultimate conclusion is this case. However, my concern is that the majority's opinion might be misread as an ironclad rule that a plaintiff can never recover lost profits when losing a nonproducing animal. I would conclude that if the plaintiff had lost milk profits because of a reasonable time delay in replacing the calves, the loss would be compensable. For example, if a plaintiff is required to replace a calf because of a defendant's negligence and as a result loses a period of time when the original calf would have become milk

47

producing, the loss should be compensable. The plaintiff, however, must replace the calf within a reasonable time period. In this case, I would conclude that Schrubbe's failure to replace the calves before they would become milk producing was unreasonable as a matter of law. Therefore, I concur with the majority's result.