Anton F. SCHORSCH and Anton F. Schorsch, III, Plaintiffs-Respondents,

v.

James BLADER, Chester Blader, and Louise Balder, Defendants, and

Wautoma Area School District, Defendant-Appellant.

Court of Appeals

*No. 96–1220. Submitted on briefs December 9, 1996.—Decided March 6, 1997.*

(Also reported in 563 N.W.2d 538.)

For the defendant-appellant the cause was submitted on the briefs of *Tom Kubasta* of *Kubasta, Rathjen & Bickford* of Wautoma.

For the plaintiffs-respondent the cause was submitted on the brief of *Michael D. Golden* of *Robinson, Peterson, Berk & Cross* of Appleton and *Sarah L. Rudolph* of *The Law Offices of Konrad T. Tuchscherer, S.C.* of Wausau.

Before Dykman, P.J., Roggensack and Deininger, JJ.

ROGGENSACK, J. The Wautoma Area School District appeals a $35,002.67 damage award, arising from a breach of warranty of title, for land it attempted to convey. The District claims the trial court erred when it awarded lost profits and consequential damages for a breach of warranty of title claim. The District asserts the damages should have been measured by the portion of the purchase price which represented the land on which title failed, plus interest thereon from the date of purchase and the attorney fees and costs of litigation. In the alternative, the District requests a new trial on the issue of damages. We conclude that the measure of damages used by the trial court was not correct. Therefore, we vacate the damage award, except for the attorney fees and costs of litigation, and remand to the trial court to make findings of (1) the fractional part of the purchase price[1] which the portion of the land to which title failed bears to the whole purchase price, and (2) the statutory interest thereon from the date of purchase. We affirm the remainder of the judgment. Because of our conclusion about the measure of damages, we do not reach the District's request for a new trial.

## BACKGROUND

On April 30, 1985, Anton F. Schorsch and his son purchased a schoolhouse and 1.8 acres of land from the Wautoma Area School District for $20,400. According to tax records, the assessed value of property at that time was $2,500 for the land and $18,000 for the improvements. The District represented to the Schor-

---

[1] This amount may include the extrinsic value, if any, that the .8 of an acre adds to the parcel on which good title was conveyed.

sches that it held clear title to the real estate, and signed a warranty deed transferring the property to them. The Schorsches enjoyed full use of the real estate for many years, during which time they paid property taxes and maintenance costs.

In 1993, the Schorsches agreed to sell the property to a third party. However, the purchaser refused to close when it was discovered that James, Chester and Louise Blader held title to .8 of an acre of the property.[2] The Blader portion of the land included the real estate's only access to State Highway 22. The Schorsches brought an action against the Bladers for adverse possession of that .8 of an acre, and against the District for misrepresentation and breach of warranty. On motions for summary judgment, the Schorsches lost on the adverse possession claim and prevailed on the breach of warranty claim. Neither party appeals that decision.

A trial was held on damages. The Schorsches argued that § 706.10(5), STATS., changed the former common law measure of damages for breach of warranty of title into contract damages. Therefore, lost profits and consequential damages were appropriate. The younger Schorsch testified they lost $13,600 in profits, $1,700 in prejudgment interest and $816 in postjudgment interest on the lost profits, when an accepted offer to sell for $34,000 fell through. In addition, he said they spent various amounts for repairs, insurance, electric bills and taxes from the date the sale failed. The Schorsches also claimed $12,243 in attorney fees and litigation expenses, beyond the

---

[2] The Bladers' predecessors in interest had deeded one acre containing the schoolhouse to the District, and later deeded the surrounding land to James, Chester and Louise Blader.

$20,000 which the District had agreed to pay prior to trial.

After concluding that damages for lost profits was the correct measure of damages, the trial court awarded most of what the Schorsches claimed. On appeal, the District challenges the trial court's measure of damages, as a matter of law. Alternatively, it requests a new trial on the issue of damages.

## DISCUSSION

**Standard of Review.**

■

This case requires us to decide whether § 706.10, STATS., supersedes the common law measure of damages for a breach of warranty of title. The determination of the proper measure of damages for a specific claim presents a question of law which this court reviews independently. *Schrubbe v. Peninsula Veterinary Service, Inc.*, 204 Wis. 2d 37, 41–42, 552 N.W.2d 634, 635 (Ct. App. 1996). We will likewise determine questions of statutory construction *de novo*. *State v. Vinje*, 201 Wis. 2d 98, 98, 548 N.W.2d 118, 120 (Ct. App. 1996).

**Damages.**

■

Under common law, damages for breach of warranty of seisin[3] are the consideration paid for the land, plus interest thereon from the date of payment. *Conrad v. Trustees of the Grand Grove of the U.A.O.D.*, 64 Wis.

---

[3] A breach of seisin occurs when the grantor does not lawfully own the property he attempts to convey. See 20 AM. JUR. 2D *Covenants* § 46 (2d ed. 1995).

258, 263–64, 25 N.W. 24, 27 (1885). When "title fails to only a part of the land conveyed, the grantee may recover such a fractional part of the whole consideration paid as the value at the time of the purchase of the piece to which the title fails bears to the whole purchase price, and interest thereon . . . ." *Messer v. Oestreich*, 52 Wis. 684, 696, 10 N.W. 6, 10–11 (1881). The fractional part of the purchase price of the land to which title failed may be more or less than a similar quantity of land to which good title was conveyed. The portion of the purchase price assigned to the land not conveyed will depend upon its individual characteristics. *See Bartelt v. Braunsdorf*, 57 Wis. 1, 3, 14 N.W. 869, 870 (1883). In addition, the grantee may recover the costs and attorney fees of defending or enforcing the title, whether successful or not. *See Lakelands, Inc. v. Chippewa & Flambeau Improvement Co.*, 237 Wis. 326, 342, 295 N.W. 919, 926 (1941).

The Schorsches maintain that the common law measure of damages for a breach of warranty of seisin is irrelevant, because it has been superseded by § 706.10(5), Stats., which they assert requires the use of the common law of damages for breach of contract. No citation is offered for their assertion, and the District disputes that they are correct.

When we are asked to apply a statute whose meaning is in dispute, our efforts are directed at determining legislative intent. *Katie T. v. Justin R.*, 204 Wis. 2d 401, 407, 555 N.W.2d 651, 654 (Ct. App. 1996). In attempting to determine the intent of the legislature, we begin with the plain meaning of the language used in the statute. *Id.* If the language of the statute clearly and unambiguously sets forth the legislative intent, our inquiry ends, and this court must apply that language

to the facts of the case. However, if the language used in the statute is capable of more than one meaning, this court will determine legislative intent from the words of the statute in relation to its context, subject matter, scope, history, and the object which the legislature intended to accomplish. *Chicago and North Western Transp. Co. v. Office of Comm'r of Railroads*, 204 Wis. 2d 1, 7, 553 N.W.2d 845, 848 (Ct. App. 1996).

The Schorsches rely on the following words from § 706.10(5),[4] STATS., for their theory of damages: "A conveyance . . . shall be construed according to its terms, under rules of law for construction of contracts." They argue that because § 706.10(5) requires deeds to be construed as contracts, the common law of damages for breach of contract applies, not the common law of damages for breach of warranty of title. Their argument requires us to decide whether the phrase "construction of contracts" refers to the process of determining the meaning of words used in the deed or whether that phrase refers to the types of damages awardable for breach of specific covenants.

---

[4] Section 706.10(5), STATS., states:

A conveyance by which the grantor contracts to warrant the land or its title shall be construed according to its terms, under rules of law for construction of contracts. A conveyance by which the grantor warrants the land or its title shall be construed, except as the terms of the conveyance may otherwise provide, to include covenants, for the benefit of the grantee, the grantee's heirs, successors and assigns, that the grantor at the time of conveyance is lawfully seized of the land; has good right to convey the same land or its title; that the same land or its title is free from all encumbrance; and that the grantor, the grantor's heirs and personal representatives will forever guarantee and defend the title and quiet possession of the land against all lawful claims whatever originating prior to the conveyance, except as the claims may arise out of open and notorious rights of easement, or out of public building, zoning or use restrictions.

The term, "construction," has a particular meaning when used in legal parlance. It is synonymous with "interpretation." BLACK'S LAW DICTIONARY 312 (6th ed. 1991). When one construes a contract, one determines what the contract means. *See Bank of Barron v. Gieseke*, 169 Wis. 2d 437, 455, 485 N.W.2d 426, 432 (Ct. App. 1992). One must do so before it is possible to determine whether a breach has occurred.

A deed must also be interpreted to determine its meaning. It may contain several types of promises or covenants, which are collateral to the conveyance of property. *Ollerman v. O'Rourke Co.*, 94 Wis. 2d 7, 30, 288 N.W.2d 95, 102 (1980). At common law, a deed was construed according to rules of construction for other written documents. *See Joseph Mann Library Asso. v. City of Two Rivers*, 272 Wis. 435, 445–46, 76 N.W.2d 388, 391 (1956) (construing an ambiguous deed according to the interpretation given to it by the parties); *Rioux v. Cormier*, 75 Wis. 566, 44 N.W. 654 (1890) (construing the quantity of land conveyed according to the intention of the parties); *Polly v. Gumney*, 157 Wis. 362, 147 N.W. 356 (1914) (construing a "deed" to be a mortgage because the parties did not intend to convey property, but rather to have the property stand as security for a debt).

If a warranty deed is given without a stated exception, at common law, the grantor of a warranty deed, his heirs and personal representatives, covenants with the grantee, his heirs and assigns, that: (1) the grantor is lawfully seized of the premises and has the right to convey the same; (2) the grantee shall have quiet enjoyment of the property; (3) the property is free from encumbrances; and (4) the grantor will defend the grantee's title and right of possession. *Messer*, 52 Wis. at 696, 10 N.W. at 10–11. These various warranties are

collectively known as covenants of title. *See* 20 AM. JUR. 2D *Covenants* § 46 (2d ed. 1995).

Section 706.10(5), STATS., codified certain common law covenants for the benefit of the grantee, which sometimes had been excepted from deeds, and established a rebuttable presumption that they were included, unless the terms of the deed provided to the contrary. It was upon these warranties that the Schorsches sued.

██

Section 706.10(5), STATS., did not change the rules which were used to interpret the meaning of deeds. Stated another way, § 706.10(5) confirms that the rules of law for construction of contracts are to be used to determine the substance of the covenants from the grantor to the grantee of a deed. Nothing in the language of the statute implies any change whatsoever in the measure of damages for a breach of any covenant. Therefore, we conclude that the common law measure of damages for breach of warranty of title was not changed by § 706.10(5).

We now examine the Schorsches' claim, under the common law of damages for breach of warranty of title. They were entitled to recover the portion of the purchase price which they proved to be attributable to the .8 of an acre of land to which title failed, plus statutory interest on that amount from the date of purchase. *Bartelt*, 57 Wis. at 3, 14 N.W. at 870. This recovery includes the intrinsic value of the .8 of an acre, as well as any extrinsic value the trial court finds it provided to the parcel on which good title was conveyed, on the date of purchase.

The Schorsches paid $20,400 for the schoolhouse and 1.8 acres of land. Its then current tax assessment was $20,500, with $2,500 attributable to the land.

There was testimony that the .8 of an acre, standing alone, was worth $5,000 on the date of trial. However, there was also testimony that the current market value of the parcel, as a whole, was $36,000 and the .8 of an acre represented forty-five percent of that amount. There was no direct testimony about what part of the purchase price the .8 of an acre represented. We remand to the trial court to make that determination and thereafter to calculate interest on that amount at the statutory rate from the date of purchase. The amount so determined, together with the attorney fees and costs already awarded, are the Schorsches' damages for breach of warranty of title of the .8 of an acre.

### New Trial.

This court has the authority to order a new trial on damages in the interests of justice. Section 752.35, STATS. However, because the District has prevailed on its theory of damages, we do not address its alternate request for relief.

## CONCLUSION

For the reasons set forth above, we set aside $19,203.50[5] of the $35,002.67 damage award, and remand for a determination of additional damages measured by that portion of the $20,400 purchase price, which is attributable to the .8 of an acre on which title failed, and interest thereon at the statutory rate, from the date of purchase.

---

[5] The amount is comprised of the following: $300, reimbursed property taxes; $816, postjudgment interest; $13,600, lost profits; $1,700, prejudgment interest on lost profits; $742.50, insurance; $1,340, property taxes; and $705, electric bills.

*By the Court.*—Judgment affirmed in part; reversed in part and cause remanded with directions.