Edward F. BONG, and Anna L. (Nancy) Bong, Plaintiffs-Appellants,

v.

Larry CERNY, and Technical Rubber Company, Inc., Defendants-Respondents.

Court of Appeals

*No. 89–1915. Submitted on briefs April 9, 1990.—Decided September 27, 1990.*

(Also reported in 463 N.W.2d 359.)

For the plaintiffs-appellants the cause was submitted on the briefs of *Richard O. Wright Law Offices, S.C.,* by *Richard O. Wright,* of Montello.

For the defendants-respondents the cause was submitted on the briefs of *Herrick & Fry, S.C.,* by *Kristi L. Fry,* of Fond du Lac.

Before Gartzke, P.J., Dykman and Sundby, JJ.

GARTZKE, P.J.    Edward and Nancy Bong appeal from a judgment dismissing their complaint under the Wisconsin Fair Dealership Law, ch. 135, Stats., against Technical Rubber Company, Inc. (Tech Rubber) and Larry Cerny. Tech Rubber manufactures tire repair supplies. It sells its products to "distributors." Cerny was a Tech Rubber distributor. Tech Rubber permits its distributors to use jobbers. The primary issue raised by the defendants' motion for summary judgment is whether Tech Rubber or Cerny is a "grantor" of a "dealership" to the Bongs under sec. 135.02, Stats.[1] Given the undis-

---

[1]Section 135.02(5), Stats., defines "grantor" as "a person who grants a dealership." Section 135.02(2) defines a "dealer" as

puted facts, we conclude that neither Tech Rubber nor Cerny is a grantor, and we therefore affirm the judgment.[2]

Summary judgment methodology is governed by sec. 802.08, Stats., and has been described in many cases such as *Grams v. Boss,* 97 Wis. 2d 332, 338, 294 N.W.2d 473, 476-77 (1980). Our review is *de novo* and independent of the trial court's decision.[3]

The Bongs' complaint alleges that before November 13, 1987, they operated a dealership, as defined by sec. 135.02(3), Stats., for Tech Rubber and Cerny under an oral agreement. Their dealership included exclusive territorial rights in the Green Bay, Wisconsin area. On November 13, 1987, Tech Rubber and Cerny terminated

"a grantee of a dealership situated in this state." Section 135.02(3) defines a "dealership" as:

> a contract or agreement, either expressed or implied, whether oral or written, between 2 or more persons, by which a person is granted the right to sell or distribute goods or services, or use a trade name, trademark, service mark, logotype, advertising or other commercial symbol, in which there is a community of interest in the business of offering, selling or distributing goods or services at wholesale, retail, by lease, agreement or otherwise.

[2]The judgment also awarded Cerny $1,500 on a counterclaim against the Bongs. The Bongs do not argue that the judgment on the counterclaim was incorrect, and we do not address it. *Reiman Associates v. R/A Advertising,* 102 Wis. 2d 305, 306 n.1, 306 N.W.2d 292, 294 (Ct. App. 1981).

[3]The trial court made findings of fact when deciding the motion for summary judgment. Findings of fact are not made under summary judgment methodology. *State Bank of La Crosse v. Elsen,* 128 Wis. 2d 508, 515, 383 N.W.2d 916, 919 (Ct. App. 1986). The trial court decides only whether "there is no genuine issue as to any material fact and [whether] the moving party is entitled to a judgment as a matter of law." Sec. 802.08(2), Stats.

the dealership without good cause, contrary to ch. 135. The Bongs suffered loss of profits and business reputation.

We read the complaint to allege that Cerny and Tech Rubber granted a dealership to the Bongs. Section 135.03, Stats., prohibits the grantor of a dealership from terminating the dealership without good cause. Because sec. 135.06, Stats., allows a dealer to bring an action for damages against the grantor for a termination without good cause, the complaint states a claim.

Tech Rubber and Cerny answered jointly. They deny the allegations of the complaint. We conclude that the pleadings raise issues of fact as to the Bongs' claim against Tech Rubber and Cerny.

Tech Rubber and Cerny jointly moved for summary judgment dismissing the Bongs' claim. We turn to the affidavits supporting their motion to determine whether Tech Rubber and Cerny have established a *prima facie* defense. *Grams v. Boss,* 97 Wis. 2d at 338, 294 N.W.2d at 476–77.

According to the affidavit by Tech Rubber's vice-president, Duane and Dorothy Neuman were a Tech Rubber distributor and the Bongs were jobbers for the Neumans. As a Tech Rubber distributor, the Neumans could agree with the Bongs that the Bongs would be jobbers for the Neumans, but the Neumans had no authority to make agreements with the Bongs on behalf of Tech Rubber. Tech Rubber entered no agreement with the Bongs or with the Neumans by which Tech Rubber granted to the Bongs the right to sell or distribute Tech Rubber goods.

Given those facts, the question is whether the affidavit by Tech Rubber's vice-president establishes a

*prima facie* defense for his company. That question requires application of the Fair Dealership Law to the facts, and is an issue of law which we decide without deference to the view of the trial court. *Bush v. National School Studios,* 131 Wis. 2d 435, 438, 389 N.W.2d 49, 51 (Ct. App. 1986). We conclude that the affidavit establishes the *prima facie* defense that Tech Rubber is not a "grantor" of a dealership to the Bongs.

The Fair Dealership Law authorizes an action against a "grantor" for wrongful termination of a dealership. Section 135.06, Stats. A "grantor" is "a person who grants a dealership." Section 135.02(5). The definition of "dealership" requires an express or implied agreement "by which a person *is* granted the right to sell or distribute . . .." Section 135.02(3) (emphasis added). That element of the definition speaks in the present tense and is not met by the agreement between Tech Rubber and the Neumans.

In their brief, the Bongs emphasize the part of the agreement described by the vice-president between Tech Rubber and the Neumans which allowed the Neumans to hire jobbers. The statutory definition of "dealership" includes an agreement between two parties which grants a dealership to a third party. However, the express agreement between Tech Rubber and the Neumans does not grant a dealership to anyone. It merely authorizes further agreements, which may or may not occur, between the Neumans and unidentified third parties.[4] The express agreement granted nothing to the Bongs.

---

[4]We add that designating a person as a "jobber" is not, without more, the grant of a dealership. The questions under sec. 135.02(3), Stats., are whether the person "is granted" a particular right and whether the required "community of interest" exists. The title of or label attached to the person is not enough.

We turn to whether the vice-president's affidavit shows an implied agreement by Tech Rubber or Cerny to grant a dealership to the Bongs. The context of sec. 135.02(3), Stats., shows that the implied contract or agreement referred to by the statute is a contract implied in fact.

In this state:

> The essence of a contract implied in fact is that it arises from an agreement circumstantially proved. *Theuerkauf v. Sutton,* 102 Wis. 2d 176, 184, 306 N.W.2d 651, 657 (1981). It requires, like an express contract, the element of mutual meeting of minds and of intention to contract; it is established by proof of circumstances from which the intention is implied as a matter of fact. *Id.* at 183–84, 306 N.W.2d at 657. Such circumstances may include the conduct of the parties. *California Wine Association v. Wisconsin Liquor Co.,* 20 Wis. 2d 110, 122, 121 N.W.2d 308, 315 (1963). But an implied contract must arise under circumstances which, "according to ordinary course of dealing and common understanding of men, show a mutual intention to contract." *Theuerkauf* at 185, 306 N.W.2d at 658, quoting *Gerovac v. Hribar Trucking, Inc.,* 43 Wis. 2d 328, 332, 168 N.W.2d 863, 865 (1969).

*Schaller v. Marine Nat'l. Bank,* 131 Wis. 2d 389, 398, 388 N.W.2d 645, 649 (Ct. App. 1986) (footnote omitted).

Whether the parties reached the agreement necessary for a contract implied in fact "depends upon an objective assessment of the parties' external expression of intention as distinguished from their undisclosed intentions." *Theuerkauf,* 102 Wis. 2d at 186, 306 N.W.2d at 658. For that reason, whether a contract is to

be implied in fact may be determined on summary judgment. *Schaller* is an example. In *Schaller* we granted a defendant's motion for summary judgment after we concluded that certain conduct could not evince an implied contract. 131 Wis. 2d at 400–401, 388 N.W.2d at 650.

Counsel for Cerny also submitted an affidavit supporting the motion for summary judgment. That affidavit incorporates Cerny's testimony in another lawsuit. Cerny testified that he entered no agreement with the Bongs. For that reason, Cerny was not a "grantor" as to the Bongs.[5] Nothing in his testimony suggests a basis for an implied agreement to grant a dealership. Cerny's testimony establishes a *prima facie* defense to the Bongs' complaint against him.

Tech Rubber and Cerny having established a *prima facie* case for summary judgment dismissing the complaint, we examine the Bongs' submissions. We do so to determine whether there exist disputed material facts or undisputed material facts from which reasonable alternative inferences may be drawn sufficient to entitle the Bongs to trial.[6] *Grams v. Boss,* 97 Wis. 2d at 338, 294

[5]Whether the Neumans granted a dealership to the Bongs is not an issue. The Neumans are not parties to this action.

[6]The Bongs submitted no affidavits. Rather, the Bongs refer in their briefs to affidavits they submitted to oppose a change in venue and to depositions. This is poor practice. Evidentiary facts should be submitted by affidavit directed to solely the issues relevant to the motion for summary judgment. Facts stated in a deposition should be submitted by an affidavit specifying the testimony relied on. *Commercial Discount Corp. v. Milwaukee W. Bank,* 61 Wis. 2d 671, 678, 214 N.W.2d 33, 36–37 (1974). We may ignore documents improperly submitted for purposes of summary judgment. *Staples v. Young,* 142 Wis. 2d 194, 205, 418 N.W.2d 329, 333 (Ct. App. 1987), *rev'd on other grounds,* 149 Wis. 2d 80,

N.W.2d at 476–77.

The Bongs rely on affidavits and depositions which show that under their agreement with the Neumans, the Bongs sold Tech Rubber products to the exclusion of competitors' products at prices established by Tech Rubber. They purchased the products from Tech Rubber through the Neumans and used Tech Rubber decals and logos. Those facts may show an express or implied agreement by which the Neumans granted the right to sell or distribute to the Bongs. They do not show an express or implied agreement by which Tech Rubber or Cerny granted to the Bongs the right to sell or distribute Tech Rubber products, as required by sec. 135.02(3), Stats.

Edward Bong testified that after Cerny became a distributor, he and Cerny never reached an agreement as to what Bongs' territory should be. Although Cerny insisted that the Bongs stop selling in the Green Bay area (which was part of the territory the Neumans had assigned to them), they continued to do so. The Bongs tried to sell in new territory which Cerny assigned to them but they gave up. This testimony eliminates the possibility of an implied agreement between the Bongs and Cerny regarding a dealership.

The Bongs rely upon Duane Neuman's testimony for several facts: Tech Rubber authorized Neuman to organize and assign exclusive territories to jobbers who would represent Tech Rubber. Tech Rubber agreed not to sell directly to his jobbers. Tech Rubber had nothing to do with the price at which he sold to his jobbers. Tech Rubber was to get sales information from him, not his jobbers. For Tech Rubber to set up another person in an area in which he had already obtained a jobber would violate his agreement with Tech Rubber. In 1985 Tech

---

438 N.W.2d 567 (1989). However, since the inconvenience has been slight, we examine the items the Bongs refer to in their brief.

Rubber advised him and other distributors that it would conduct education seminars for jobbers. Neuman's testimony fails to establish that Tech Rubber or Cerny entered an express agreement under sec. 135.02(3), Stats., by which the Bongs were granted the right to sell or distribute Tech Rubber products. Nor does it support an implied agreement which reflected an intent by Tech Rubber to grant a present right to the Bongs.

The Bongs argue that "obsolete notions of privity" should not prevent them from being Tech Rubber dealers, and that we should consider them as third-party beneficiaries of a contract between Tech Rubber and the Neumans.[7] However, whether a person is a "grantor" under the Fair Dealership Law turns solely on whether the elements of sec. 135.02(5), Stats. have been met. The Bongs have not shown that Tech Rubber and Cerny entered an express third-party beneficiary agreement by which a dealership "is granted" to the Bongs, as required by sec. 135.02(3), Stats. Nor have they shown an implied agreement to that effect.

The Bongs assert that our approach is contrary to the express intention of the legislature. They point to sec. 135.025(1), Stats., which provides that the Fair Dealership Law "shall be liberally construed and applied to promote its underlying remedial purposes and policies." But sec. 135.025(2) describes those purposes and policies in terms of "dealers," "grantors," and "dealerships," all carefully defined terms. The definitions are plain and unambiguous. That being the case, we may not

---

[7]Just how "obsolete" privity has become is open to debate. "Generally, a contract between two persons is not binding on persons who are not in privity to it." *Journal/Sentinel, Inc. v. Pleva,* 155 Wis. 2d 704, 709, 456 N.W.2d 359, 361 (1990).

use the legislative direction that the law "be liberally construed and applied" to ignore the definitions. "By liberal construction all that is meant is that the terms actually used by the legislature shall be given the fullest application within proper definitional guidelines that are consistent with the spirit of the legislation." *American Motors Corp. v. DILHR,* 101 Wis. 2d 337, 351, 305 N.W.2d 62, 68 (1981). "Liberal construction does not give a court the right to expand the terms of the legislation." *Id.*

The Bongs next contend that "community of interest" is the key aspect of the grantor-dealer relationship. They assert that if a "community of interest" exists, then persons in their position have been granted the right to sell or distribute, as provided in sec. 135.02(3), Stats. We disagree. Under sec. 135.02(3), both a "grant" of the right to sell or distribute *and* a "community of interest" must be shown to exist. The required grant can no more be implied from a community of interest than can a community of interest be implied from a grant.

Because Tech Rubber and Cerny have established a *prima facie* defense, and the Bongs have failed to show that a genuine issue of material fact exists which must be tried, the trial court properly granted summary judgment to the defendants.

*By the Court.*—Judgment affirmed.