Troy M. HELLENBRAND and Hellenbrand & Hellenbrand, S.C., Plaintiffs-Appellants,

v.

Franklin C. HILLIARD, American Family Mutual Insurance Co., Laura L. Fenton and Allstate Insurance Co., Defendants-Respondents,†

DEAN HEALTH PLAN INC. and Wisconsin Mutual Insurance Co., Subrogated Parties-Defendants.

Court of Appeals

*No. 03–0007. Submitted on briefs September 8, 2003.—Decided July 8, 2004.*

2004 WI App 151

(Also reported in 687 N.W.2d 37.)

† Petition to review dismissed 9-1-04.

On behalf of the plaintiffs-appellants, the cause was submitted on the briefs of *J. Michael Riley* and *Jason J. Knutson* of *Atterbury, Riley & Kammer, S.C.*, Madison.

On behalf of the defendants-respondents American Family Mutual Insurance Company and Franklin C. Hilliard, the cause was submitted on the brief of *Matthew E. Valley* and *Michael P. Crooks* of *Peterson, Johnson & Murray, S.C.*, Madison.

Before Deininger, P.J., Dykman and Lundsten, JJ.

¶ 1. LUNDSTEN, J. Hellenbrand & Hellenbrand, S.C., appeals an order of the circuit court granting summary judgment in favor of defendants, including American Family Mutual Insurance Company. Although Hellenbrand & Hellenbrand is a corporation, for ease of discussion we will refer to it as if it were the person Troy Hellenbrand, also a named plaintiff in this case. Similarly, although multiple insurance companies are involved, including Hellenbrand's own insurance company, we refer mostly to the tortfeasor's insurance company, American Family.[1]

---

[1] The only appellant in this case is Hellenbrand & Hellenbrand, S.C., because the order appealed was only final as to Hellenbrand & Hellenbrand, S.C. Nonetheless, Troy Hellenbrand was the main actor on behalf of Hellenbrand & Hellenbrand and we believe clarity for non-party readers will be served

¶ 2. This case involves the availability of certain types of damages. Hellenbrand's minivan was damaged in an accident. American Family assumed responsibility for compensating Hellenbrand. Hellenbrand sought an award for loss of value representing the difference between the fair market value of his minivan immediately before the accident and its value after it was repaired. The circuit court concluded that case law precluded such an award. Hellenbrand also sought an award for the loss of use of his damaged minivan for the time period before Hellenbrand's repaired minivan was returned to him and during which Hellenbrand operated a new minivan he had purchased. The circuit court concluded that when Hellenbrand purchased his new minivan, he acquired a "permanent replacement" vehicle which ended his loss-of-use damages. Hellenbrand asserts that these legal rulings of the circuit court are erroneous and, consequently, that the court wrongly granted summary judgment. We agree. We reverse summary judgment and remand for further proceedings.

### Background

¶ 3. The following facts are undisputed for purposes of summary judgment analysis. Hellenbrand purchased a 2001 Honda Odyssey LX minivan for $24,508. About five months later, on April 19, 2001, Hellenbrand's minivan was seriously damaged in an accident caused by an American Family insured. Ameri-

if we treat Troy Hellenbrand as if he were the plaintiff-appellant. Similarly, although multiple defendants and insurance companies are involved, we refer mostly to American Family. Any inaccuracies that arise from using this shorthand have no significance for purposes of the issues we resolve in this opinion.

745

can Family accepted responsibility for repairing or replacing Hellenbrand's van.

¶ 4. On April 26, 2001, Hellenbrand rented a vehicle from a rental company. About one month later, on May 21, 2001, Hellenbrand purchased and took possession of a new 2001 Honda Odyssey LX minivan. There are conflicting assertions as to whether, prior to this purchase, Hellenbrand had been informed that his minivan would be repaired. It is undisputed, however, that Hellenbrand had not been told that his minivan would be deemed a total loss, such that he would be compensated for the value of this minivan prior to the accident. Two days after Hellenbrand purchased his new minivan, he returned the rental vehicle.

¶ 5. On August 3, 2001, Hellenbrand picked up his repaired minivan. Hellenbrand put his repaired minivan up for sale and eventually sold it for $19,000.

¶ 6. In the course of discovery, Hellenbrand produced evidence indicating that his minivan had a fair market value of approximately $23,000 immediately before the accident and $19,000 after it was repaired. The details of this evidence are not important for purposes of this appeal.

### Discussion

¶ 7. The circuit court granted summary judgment in favor of American Family. We review summary judgment *de novo,* applying the same standard as the circuit court. *Green Spring Farms v. Kersten,* 136 Wis. 2d 304, 315, 401 N.W.2d 816 (1987). A party is entitled to summary judgment if there is no genuine issue as to

any material fact and that party is entitled to judgment as a matter of law. WIS. STAT. § 802.08(2) (2001–02).[2]

*Whether Summary Judgment Should be Granted in Favor of American Family Based on Hellenbrand's Failure to Comply with a Procedure Ordered by the Circuit Court*

■

¶ 8. American Family argues that summary judgment was properly granted because Hellenbrand failed to comply with a circuit court order directing Hellenbrand to respond in a particular format to proposed undisputed facts contained in American Family's summary judgment motion. American Family points out that the circuit court's order setting forth the summary judgment procedures the parties must employ states: "Unless the responding party properly places a factual proposition of the moving party in dispute, the court will conclude that there is no genuine issue of fact as to the [undisputed fact] initially proposed by the moving party." American Family contends that Hellenbrand's failure to respond to American Family's proposed undisputed facts in the manner set forth in the circuit court's order constituted both a waiver of Hellenbrand's right to contest those facts and an independent basis for summary judgment in favor of American Family. We agree that Hellenbrand waived his right to contest American Family's proposed undisputed facts, but disagree that this failure constitutes an independent basis for summary judgment.[3]

---

[2] All references to the Wisconsin Statutes are to the 2001–02 version unless otherwise noted.

[3] We use the term proposed "undisputed facts" even though the circuit court's order regarding summary judgment proce-

¶ 9. The circuit court's order specified a procedure for exchanging summary judgment arguments. The order reasonably informs a responding party that, if it disagrees with a proposed undisputed fact offered by the moving party, the responding party must specify the fact by paragraph number and explain why the fact is disputed. The circuit court's order provides that if a responding party does not contest a proposed undisputed fact, that fact will be deemed undisputed for purposes of deciding the summary judgment motion. Because we agree with the circuit court and American Family that Hellenbrand failed to respond to proposed undisputed facts in the manner specified by the circuit court, American Family's proposed facts were properly deemed undisputed by the circuit court, and we likewise deem them undisputed.

¶ 10. However, Hellenbrand's failure to contest proposed facts in the manner specified by the circuit court does not, by itself, form a basis for granting summary judgment against Hellenbrand. Moreover, as we read the circuit court's order, nothing prevented Hellenbrand from asserting additional facts, even if his response to facts proposed by American Family did not comply with the court's order. Thus, the question remains whether American Family is entitled to summary

dures actually required the parties to submit and respond to proposed "findings of fact." Findings of fact, however, are not made in the course of deciding summary judgment motions. To the contrary, the purpose of summary judgment methodology is to determine whether a lawsuit may be resolved without fact finding. Despite the repeated use of the term "findings of fact" before the circuit court, and now before this court, we have no doubt that the parties and the circuit court all understand that the circuit court's order required proposed undisputed facts.

748

judgment in light of its proposed undisputed facts and any additional undisputed facts. On this topic, American Family does not suggest that any argument made by Hellenbrand is at odds with American Family's proposed undisputed facts or other undisputed facts. Thus, American Family has not presented any reason why Hellenbrand's failure to comply with the circuit court's procedure, by itself, warrants summary judgment against Hellenbrand.

*Loss-of-Value-After-Repair Damages*

¶ 11. Hellenbrand's minivan was repaired at a cost of about $11,000 and returned to him. This repair cost is not in dispute. Hellenbrand argues, however, that the circuit court erred when it granted summary judgment against him dismissing his loss-of-value-after-repair claim. Hellenbrand asserts that the repairs to his minivan did not restore the van to its pre-accident value and that he is entitled to damages for the reduction in value of his repaired van. Hellenbrand points to deposition testimony indicating that this difference is approximately $4,000. He asserts that remand is appropriate because there is a material factual dispute regarding this difference in value.

¶ 12. The circuit court rejected Hellenbrand's loss-of-value-after-repair argument. By way of explanation, the court adopted conclusions of law proposed by American Family:

> In Wisconsin when an automobile is damaged, but not destroyed, the measure of damages is the difference between the automobile's market value before injury and its value immediately after injury.
>
> . . . .

749

> If the changed market value and the cost of repairs are both determinable, then the lower of the two figures is the coverable amount of damages.

(Citations omitted.) Because neither party offered evidence showing the difference in market value immediately before and immediately after the accident, it appears the circuit court concluded that the only admissible evidence of loss-of-value damages was the cost of repairs, namely, $11,000.[4]

¶ 13. Hellenbrand's basic argument is simple. He argues that the purpose of damages is to make him whole and that he has not been made whole because the value of his minivan before the accident was approximately $23,000 and the value of his minivan after it was repaired and returned to him was $19,000. American Family does not discuss whether Hellenbrand was made whole. Instead, the insurance company argues that "well established" case law in Wisconsin limits Hellenbrand's damages to the cost of repairs made to his van.

¶ 14. American Family primarily relies on two cases and a pattern jury instruction: *Nashban Barrel & Container Co. v. G.G. Parsons Trucking Co.*, 49 Wis. 2d 591, 182 N.W.2d 448 (1971); *Krueger v. Steffen*, 30 Wis. 2d 445, 141 N.W.2d 200 (1966); and Wis JI—Civil 1804. American Family argues that when personal

---

[4] Hellenbrand was not required to present evidence showing the difference in the value of his van immediately before and immediately after the accident, even though this is one means of measuring damages. When a plaintiff asserts damages, he or she may present evidence of damages and, if the defendant is dissatisfied with damages based on the approach used by the plaintiff, the defendant may present evidence of damages based on an alternative approach. *See Laska v. Steinpreis*, 69 Wis. 2d 307, 314, 231 N.W.2d 196 (1975).

property is damaged but repairable, fact finders must be instructed to select the lower of two measures of damages: (1) the cost or estimated cost of repairs or (2) diminution in fair market value. American Family contends the decisions in *Nashban Barrel* and *Krueger* demonstrate that this "lower of the two" rule is controlling in this case. However, neither *Nashban Barrel* nor *Krueger* addresses whether a party may be awarded damages for loss of value of a repaired item of personal property. We begin with *Krueger*.

¶ 15. According to American Family, in *Krueger* the supreme court affirmed an award because it was supported by diminution-in-value evidence and the diminution in value was less than the cost of repair. This is not an accurate summary of the *Krueger* decision. It is true that the award affirmed in *Krueger*, $525, was based on "diminution-in-value" evidence, but nowhere does the supreme court say that this is the proper amount because it was less than the cost of repair. The *Krueger* court does discuss evidence of the estimated cost to repair the vehicle, but only to show that the circuit court was entitled to reject a lower repair estimate offered by the defendant. *Krueger*, 30 Wis. 2d at 448–50. The *Krueger* opinion is silent as to whether an award higher than diminution in value would have been affirmed. More to the point, *Krueger* does not contain an all-encompassing rule that limits value damages to the lower of repair cost or diminution in value.

¶ 16. American Family's reliance on *Nashban Barrel* comes closer to the mark, but once again that decision does not purport to set forth a rule encompassing all damage award possibilities when an item of property is repairable.

¶ 17. The supreme court in *Nashban Barrel* faulted the circuit court for failing to instruct the jury that one possible measure of damages was the cost of repair. The property damage jury instruction erroneously omitted in *Nashban Barrel* is, for purposes of this appeal, the same as the current version of that instruction. Accordingly, we quote the current pattern instruction:

> When personal property has been damaged and can be repaired, the loss to the owner is determined by one of two measures of damage. The first measure is the "Fair Market Value" rule. This rule measures the difference between the fair market value of the property immediately before the [collision] and its fair market value immediately after the [collision]. "Fair market value" is the amount property will sell for where the owner is willing but not required to sell the property to a buyer willing but not required to buy the property.

> The second measure of damage is the "Cost of Repair" rule. If the property can be restored to its condition before the [collision], compensation to the owner is measured by the reasonable cost of the repairs necessary to restore the property to its prior condition. The measure under this second rule is the reasonable cost to restore the property to its former condition, not what may have been the actual cost.

> If the evidence allows you to apply both of these rules, and if in applying them you arrive at two different figures, your answer to question ___ should be the lower of the two figures.

Wis JI—Civil 1804. The loss-of-value issue in *Nashban Barrel* was narrow. The defendant complained, and the supreme court agreed, that the *failure* to give the above instruction had the effect of forcing the jury to calculate diminution in fair market value and precluding the jury

752

from awarding a lower cost-of-repair amount. *Nashban Barrel*, 49 Wis. 2d at 603–06. The omission of the instruction was error because there was trial evidence supporting findings that the damaged property had "no readily ascertainable market" and that the property could be repaired at a cost lower than the market loss value asserted by the plaintiff. *Id.* at 595, 604–06. The net effect of the jury instructions given and not given was to take away a lower measure of damages that might still have served to make the plaintiff whole. Thus, the court in *Nashban Barrel* approved the use of the above pattern jury instruction in a particular type of case; the court did not hold that the pattern jury instruction is sufficient in all cases where an item of property is repairable. Language from the supreme court's decision in *Kim v. American Family Mutual Insurance Co.*, 176 Wis. 2d 890, 501 N.W.2d 24 (1993), is apt here: "As a practical matter a court cannot anticipate every factual scenario that could be presented in determining how to phrase an opinion. The fact situation presented in this case was not presented or addressed in the *Nashban* case." *Id.* at 896.

¶ 18. The key to understanding why neither *Nashban Barrel* nor *Krueger* resolves the issue presented in this case is understanding that neither case presented the opportunity to address the argument made by Hellenbrand. That is, neither the plaintiff in *Nashban Barrel* nor the plaintiff in *Krueger* argued that a repaired and returned item of property had a value less than the item's value before the injury. In the absence of this argument, the supreme court apparently assumed, as will often be true, that if property is repairable, then repairing the property makes the plaintiff whole. In that situation, awarding a plaintiff

the amount needed to repair the property has the effect of fully compensating the plaintiff for his or her loss.[5]

¶ 19. Hellenbrand suggests that *Hawes v. Germantown Mutual Insurance Co.*, 103 Wis. 2d 524, 309 N.W.2d 356 (Ct. App. 1981), provides helpful guidance. We agree. In *Hawes*, the basement walls of a home collapsed and the trial court awarded damages that included both the repair cost and the diminished value of the home after the repair. *Id.* at 530, 533–34. In affirming the trial court, we explained:

> [The defendants] argue that the trial court erred when it allowed . . . both the cost of repair and diminution in value. They cite the rule of *Laska v. Steinpreis,* 69 Wis. 2d 307, 314, 231 N.W.2d 196, 200 (1975), that where both cost of repair and diminution in value are in evidence, the proper measure is the lesser of the two. The fallacy in [defendant's] reliance on this rule is that the diminution in value it addresses is "the difference between the reasonable market value of the property immediately before the injury . . . and its reasonable market value immediately after the injury," i.e., before the injury is repaired. *Laska, supra,* 69 Wis. 2d at 313, 231 N.W.2d at 200. No such evidence was offered in this case, so the cost of repair figure must stand. *Id.* at 314, 231 N.W.2d at 200.

---

[5] The supreme court in *Krueger* quoted with approval language from a dissenting opinion in *Kimball v. Antigo Building Supply Co.*, 261 Wis. 619, 53 N.W.2d 701 (1952), which speaks in terms of repairs needed to restore an automobile to its original condition. *Krueger v. Steffen*, 30 Wis. 2d 445, 449, 141 N.W.2d 200 (1966) (quoting *Kimball*, 261 Wis. at 627 (Currie, J., dissenting)). The obvious assumption contained in the *Kimball* language is that the owner has been made whole because the vehicle has been restored to its original condition and, as such, is just as valuable as it was prior to being damaged. *Krueger*, 30 Wis. 2d at 449–50.

The diminution in value which the trial court awarded in addition to cost of repair does not fall within the rule of *Laska,* but is in the nature of special damages. It reflects evidence that the repairs, when made, will not restore the property to its pre-collapse value. There is evidence that the basement collapse will have to be disclosed to any prospective purchasers of the home, that the new wall, built by the same masonry company who built the failed wall . . ., contains defects in design which may cause it to fail again, and that this latter fact may also have to be disclosed to prospective purchasers. The trial court did not err in awarding cost of repair, and its finding that even after these repairs have been made market value will be impaired is not against the great weight and clear preponderance of the evidence.

*Id.* at 533–34.

¶ 20. American Family does not take issue with the logic of *Hawes.* Rather, American Family argues that *Hawes* should not be applied here because (1) it involves real property, (2) it has not been followed by any other court, and (3) it conflicts with the plain language of Wis JI—Civil 1804. Each of these arguments is easily disposed of.

¶ 21. First, American Family does not explain why it matters that *Hawes* involved real property and this case involves personal property. We note that the drafters of the jury instruction on damages for personal property, Wis JI—Civil 1804, point to a real property case for the "lower of the two" provision. *See* Comment to Wis JI—Civil 1804, citing *Hickman v. Wellauer,* 169 Wis. 18, 28, 171 N.W. 635 (1919). In turn, *Nashban Barrel,* a personal property case, relies on Wis JI—Civil 1804. *Nashban Barrel,* 49 Wis. 2d at 603, 606. Thus, both the personal property damage jury instruction and *Nashban Barrel,* a personal property case, rely on a real

property case for the "lower of the two" rule. Ironically, American Family tells us this case is controlled by WIS JI—CIVIL 1804 and *Nashban Barrel*.

¶ 22. We turn to American Family's assertion that no court has relied on our loss-in-value-after-repair discussion in *Hawes*. Assuming this is true—and it appears to be true with respect to published decisions—it is no indication that our reasoning was flawed. Indeed, American Family points to no decision reaching a different conclusion on this point.

¶ 23. Which brings us to American Family's last *Hawes* argument, that *Hawes* is in conflict with WIS JI—CIVIL 1804. Our response to American Family on this point is already laid out in ¶¶ 17–18 above. Suffice it to say here that we agree with Hellenbrand that WIS JI—CIVIL 1804 is a useful instruction, but one that does not cover all valid damages theories when an item of personal property is repairable.

¶ 24. Accordingly, we see no reason why the damages approach used in *Hawes* should not be applied here. *Hawes* sets forth a sensible rule that comports with the purpose of tort law, making "whole those who suffer damages as a result of another's negligence." *Vogel v. Liberty Mut. Ins. Co.*, 214 Wis. 2d 443, 455, 571 N.W.2d 704 (Ct. App. 1997); *see also White v. Benkowski*, 37 Wis. 2d 285, 290, 155 N.W.2d 74 (1967) ("In Wisconsin compensatory damages are given to make whole the damage or injury suffered by the injured party."). Neither *Nashban Barrel* nor *Krueger* precludes the loss-of-value-after-repair damages approved of in *Hawes*. In fact, the full discussion in *Krueger* makes clear that when a vehicle is repaired, the repair cost is evidence of damages, but not the sole measure of damages. *See Krueger*, 30 Wis. 2d at 449–50.

¶ 25. We conclude that when a plaintiff proves that repairs to personal property have not restored the property to its pre-injury value, and the plaintiff demonstrates that he or she has been or will be harmed by such loss in value, the plaintiff is entitled to damages for the proven lost value. A couple of qualifications to this rule come to mind.

¶ 26. First, a particular area of law may contain an established exception to the general make-whole rule. "The rules for measuring damages for loss of personal property are governed by a variety of concepts that attempt to make the owner whole for the loss sustained as a result of another's negligence. Economic concepts, however, limit the make whole doctrine in order to minimize damages and avoid economic waste." *Schrubbe v. Peninsula Veterinary Serv., Inc.*, 204 Wis. 2d 37, 42, 45, 552 N.W.2d 634 (Ct. App. 1996) (limiting the general make-whole rule by holding that damages should not be higher based on the particular plaintiff's inability to afford replacement calves).

¶ 27. Second, we do not address what should happen if repair costs plus loss-of-value-after-repair damages exceed the fair market value of an item pre-injury. Perhaps in this scenario the availability of damages exceeding pre-injury fair market value may depend on how the decision to repair the vehicle is made. Perhaps not. We do not weigh in on the topic.

¶ 28. Having concluded that the circuit court erred when it rejected Hellenbrand's loss-of-value-after-repair damages theory, we turn to the facts in this case. Hellenbrand asserts there is a material factual dispute as to whether his minivan was worth less after the

repair and in what amount. American Family does not address this topic because it relies entirely on its argument that such damages are contrary to established law. Our own review of the record reveals that deposition testimony contains what appears to be admissible evidence showing that Hellenbrand's repaired van is worth about $4,000 less than before the accident. Therefore, we agree with Hellenbrand that the circuit court erred when it dismissed his loss-of-value-after-repair damages claim, and we remand for further proceedings on that topic.[6]

### *Loss-of-Use Damages for the Time Period After Hellenbrand Purchased a New Minivan and Before Hellenbrand's Repaired Minivan was Returned to Him*

¶ 29. The parties agree that Hellenbrand is entitled to loss-of-use damages as a result of the accident that seriously damaged his minivan. In particular, the parties agree that Hellenbrand should receive damages for the rental costs he incurred for approximately twenty-eight days after the accident. The parties disagree, however, as to whether the loss-of-use time period should include time when Hellenbrand began using his newly purchased minivan after Hellenbrand returned his rental vehicle, but before Hellenbrand's damaged minivan was repaired and returned to him.

---

[6] This case involves the liability of a tortfeasor, not an interpretation of policy language that applies between an insurance company and its insured. In *Wildin v. American Family Mutual Insurance Co.*, 2001 WI App 293, 249 Wis. 2d 477, 638 N.W.2d 87, we concluded that, in light of the particular policy language in that case, the policy permitted the insurer to pay for repairs only, even if such repairs did not fully restore the vehicle to its pre-collision value. *Id.*, ¶¶ 9–10.

¶ 30. The circuit court concluded that when Hellenbrand purchased his new minivan, he was no longer entitled to loss-of-use damages. The circuit court adopted American Family's legal argument—that is, that loss-of-use damages cease on the date a claimant obtains a permanent replacement vehicle and that Hellenbrand's new minivan was, as a matter of law, a permanent replacement vehicle.

■

¶ 31. Hellenbrand argues that when, as here, a responsible party opts to repair and return a vehicle, the time period for purposes of measuring loss-of-use damages is normally the time the vehicle is out of service. In Hellenbrand's view, this is the appropriate time period even if the owner of the damaged vehicle decides to deal with loss of use by purchasing a vehicle. Hellenbrand contends there are material disputed facts regarding whether he incurred compensable damages during this time period and that remand is necessary. We agree with Hellenbrand that when a vehicle is repaired and returned to its owner, the relevant loss-of-use time period does not end simply because the owner decides to cope with loss of use by purchasing a vehicle. However, for reasons discussed below, we do not address whether there is a material factual dispute as to whether Hellenbrand incurred compensable damages during this time period, but instead remand on this topic.

¶ 32. We begin by examining American Family's legal argument. Relying on *Nashban Barrel*, 49 Wis. 2d 591, American Family argues that a claimant is entitled to receive damages for the loss of vehicle use for a time period reasonably required for replacement and that the proper measure of damages for loss of use is the cost of hiring or renting another vehicle during "either the

period of replacement or repair." Then, relying on *Kim*, 176 Wis. 2d 890, American Family asserts that the purpose of the law on this topic is to limit damages to the period of time in which the claimant is burdened by the loss of his vehicle. According to American Family, Hellenbrand's burden ended when he no longer had to pay for a rental vehicle, that is, when he purchased a new minivan. American Family contends that Hellenbrand's new minivan was a "permanent replacement" vehicle which ended his loss-of-use time period because once Hellenbrand acquired his new minivan, he "suffered none of the compensable inconveniences mentioned in the *Kim* case."

¶ 33. American Family's argument confuses the common usage of "permanent replacement" with the more particular meaning that term has in loss-of-use-damages cases. No doubt it can be said that Hellenbrand permanently replaced his damaged minivan with a nearly identical new minivan. But the term "permanent replacement vehicle" has a particular meaning in the context of loss-of-use law. This term is used when a claimant is notified that a damaged vehicle will not be repaired and there is agreement that the claimant may acquire a permanent replacement vehicle so as to put an end to his or her loss-of-use damages. In such cases, the claimant is made whole both by receiving loss-of-use damages and by receiving money tendered toward the purchase of the replacement vehicle. Here, American Family did not offer to provide money for a replacement vehicle. Instead, it only offered to pay for repairs to Hellenbrand's damaged minivan. Accordingly, American Family, as the responsible party, was liable for

loss-of-use damages until the time the repaired minivan was returned to Hellenbrand.[7]

¶ 34. Further, neither *Nashban Barrel* nor *Kim* contains a blanket rule providing that the purchase of a new comparable vehicle constitutes a "permanent replacement" vehicle for purposes of loss-of-use damages. Rather, these cases teach that the owner of a damaged vehicle being repaired is free to choose how to deal with loss of use and, if the owner seeks loss-of-use damages, it is up to a fact finder to determine the monetary value of the loss of use.

¶ 35. In *Nashban Barrel*, the supreme court held:

> [D]amages should be allowed for loss of use (1) during a *time period* reasonably required for replacement, including a reasonable time to determine whether the vehicle is in fact repairable, and (2) in an amount equal to that which was actually expended (absent a showing that a temporary replacement was unavailable), provided such amount was not unreasonable.

*Nashban Barrel*, 49 Wis. 2d at 601–02. In *Kim*, the supreme court clarified the above limitation. The *Kim* court explained that the *Nashban Barrel* amount-actually-expended limitation applies only when an expenditure for a temporary replacement vehicle is actually incurred, but loss-of-use damages may be

---

[7] The circuit court's order states: "The plaintiffs seek to be compensated for a loss of market value after they have elected to proceed with very substantial repair of the vehicle. In reality, it appears the plaintiffs now claim that the decision that their vehicle was reparable was wrong." However, nothing in the proposed undisputed facts submitted by either party suggests that Hellenbrand had the choice of having his van repaired or having it declared a total loss.

appropriate even when a party does not expend money for a temporary replacement vehicle:

> The legal system attempts to place the injured party in as good a position as he or she would have been in had the tortious conduct not occurred and damages naturally and proximately caused by a tort are recoverable. Even though money damages for the cost of repairs or diminution of value of the personal property will be awarded, repairing or replacing the property may take time. Accordingly courts award claimants damages to make up for the loss of use of the property, a natural and proximate consequence of the tortious conduct. Allowing recovery for the loss of use of a vehicle puts the claimants in a position equivalent to that which they would have been in had the tortious conduct not occurred.
>
> Although a claimant who does not procure a replacement for a vehicle destroyed by a tortfeasor "does not incur pecuniary loss in the form of rental payments for a substitute vehicle, the claimant may suffer substantial personal inconvenience due to the lack of an automobile. He may be forced to walk to work or to take inconvenient public transportation. He may be prevented from engaging in normal recreational pursuits or his enjoyment of those pursuits may be diminished."
>
> As the *Nashban* court concluded, loss of use is not dependent on a claimant's having procured a replacement. The *Nashban* case makes this point very clearly by allowing recovery of damages for loss of use when a replacement vehicle is unavailable. Whether a replacement vehicle is unavailable or a claimant does not choose to procure a replacement, the claimant suffers the loss of the use of the vehicle.
>
> . . . Accordingly we conclude that a claimant who does not procure a replacement vehicle may recover damages for loss of the use of the vehicle destroyed by a tortfeasor.

... When a claimant does not procure a replacement vehicle, it is more difficult to place a monetary value upon the value of the use of the car to the claimant. Nevertheless the claimant is entitled to receive as damages such sum as will compensate for the loss of use of the vehicle.

*Kim,* 176 Wis. 2d at 898–900 (citation and footnote omitted). The above "make whole" discussion in *Kim* leads us to the following conclusion: Apart from delays that might be excluded for reasons beyond the scope of this decision,[8] a claimant may recover loss-of-use damages for the time his or her vehicle is unavailable because of the accident and efforts to repair the vehicle, and such damages are available regardless whether the claimant copes with loss of use by renting a temporary replacement vehicle, purchasing a vehicle, or taking some other action.

¶ 36. In this case, it turned out that American Family decided to repair Hellenbrand's minivan. How Hellenbrand dealt with the loss of use of his damaged

---

[8] American Family asserts that the time period between July 19, 2001, when Hellenbrand's minivan was first made available to him by the repair shop, and August 3, 2001, when Hellenbrand picked up his repaired minivan, should be excluded from the loss-of-use time period because this time, according to American Family, was "self-imposed by Hellenbrand's refusal to sign" his own insurance company's waiver form. Hellenbrand responds that he should not be penalized for rightfully refusing to sign a waiver form that precluded claims for additional repairs arising out of the same accident, particularly because it turned out that additional repairs were needed. It is not clear to us from the undisputed facts that this time should be excluded. For example, it is unclear whether American Family would have benefited by avoiding liability for additional repairs if Hellenbrand had signed the waiver form. Accordingly, this dispute should be resolved on remand.

minivan was up to him.[9] The germane question on summary judgment—or for a fact finder should that be necessary—is the amount needed to compensate Hellenbrand for loss of use from the time of the accident to the time his minivan was repaired and returned to him.

¶ 37. We do not address whether Hellenbrand has presented evidence demonstrating loss-of-use damages relating to the time after he took possession of his newly purchased minivan. American Family, in the context of arguing that the time period should be excluded, asserts that Hellenbrand "suffered none of the compensable inconveniences mentioned in the *Kim* case." However, the *Kim* court did not attempt to comprehensively list compensable loss-of-use damages. At the same time, Hellenbrand does not tell us what his compensable damages for this time period are. Before the circuit court Hellenbrand requested damages equal to what he would have received if he had rented for the entire loss-of-use time period, but he does not repeat this request on appeal. It is tempting to address whether there is a material factual dispute regarding loss-of-use damages, but we are cognizant that the parties may have more to say on this topic. We also readily acknowledge that when a claimant chooses to cope with loss of use by a means other than renting a temporary replacement vehicle, the determination of the monetary value of loss of use may be complicated. *See Kim*, 176 Wis. 2d at 900 ("When a claimant does not procure a [temporary rental] replacement vehicle, it is

---

[9] American Family seems to believe that it matters whether Hellenbrand intended to replace his minivan after the accident, regardless whether it was repaired and returned to him. It does not. Loss-of-use damages are unaffected by whether Hellenbrand wanted to retain the damaged and repaired minivan or to replace it.

more difficult to place a monetary value upon the value of the [loss of] use of the car to the claimant. Nevertheless the claimant is entitled to receive as damages such sum as will compensate for the loss of use of the [repaired] vehicle."). Thus, we choose not to address this topic because the parties have not focused their attention on it and because we must, in any event, remand with respect to loss of value.

¶ 38. Before leaving this topic, we address American Family's reliance on a Lemon Law case, *Nick v. Toyota Motor Sales, U.S.A., Inc.*, 160 Wis. 2d 373, 466 N.W.2d 215 (Ct. App. 1991), *overruled in part by Hughes v. Chrysler Motors Corp.*, 197 Wis. 2d 973, 542 N.W.2d 148 (1996). American Family argues that *Nick* supports its argument that once a new vehicle is purchased, the cost of alternative transportation is not compensable. American Family, however, misreads *Nick*. In *Nick*, we stated: "The acquisition and use of a new car *after the period the initial vehicle was out of service* is not compensable." *Nick*, 160 Wis. 2d at 385 (emphasis added). The cut-off date for loss-of-use damages in *Nick* was the date the defective vehicle was put back in service, not the date the consumer purchased a new vehicle. *Id.* We held: "The cost of alternate transportation *while the vehicle was out of service* is a collateral cost for which the consumer is entitled to compensation under sec. 218.015(1)(a), Stats." *Id.* (emphasis added). Therefore, if anything, *Nick* supports Hellenbrand's position that he is entitled to loss-of-use damages for the entire time period he was denied use of his damaged minivan.

¶ 39. Therefore, we reverse the circuit court's determination that the time period for loss-of-use damages ended when Hellenbrand purchased and took possession of a new minivan, and remand for further proceedings on this topic.

### Conclusion

¶ 40. We reverse summary judgment in favor of American Family. On remand, two issues remain: first, the amount, if any, that Hellenbrand is entitled to for loss-of-value-after-repair damages and, second, the amount, if any, that Hellenbrand is entitled to for loss-of-use damages relating to the time period after he returned his rental vehicle and until his repaired van was returned to him. We do not hold that Hellenbrand is entitled to damages for these two categories of damages, only that such damages are, as a legal matter, available.

*By the Court.*—Order reversed and cause remanded with directions.

¶ 41. DYKMAN, J. *(concurring in part; dissenting in part).* I agree with the majority's conclusions on the substantive issues. But I disagree with its conclusion concerning Hellenbrand's alleged failure to comply with the trial court's summary judgment procedure order. That order directed the parties to submit "[a] Statement of Proposed Findings of Fact or a stipulation of fact between or among the parties or a combination of both." The order was inconsistent with summary judgment methodology, and Hellenbrand should not be faulted for failing to comply with it. Findings of fact are unknown to summary judgment methodology. In *Bong v. Cerny*, 158 Wis. 2d 474, 478 n.3, 463 N.W.2d 359 (Ct. App. 1990), we faced a similar situation. We said:

> The trial court made findings of fact when deciding the motion for summary judgment. Findings of fact are not made under summary judgment methodology. The trial court decides only whether "there is no genuine issue as to any material fact and [whether] the moving party is entitled to a judgment as a matter of law."

*Id.* (citations omitted).

¶ 42. If findings of fact are needed when a motion for summary judgment is being considered, it is a sure sign that the motion must be denied. Hellenbrand should not be faulted for failing to suggest findings of fact when to do so would contradict summary judgment methodology.

¶ 43. The majority translates the trial court's order into an order requiring "proposed undisputed facts." While that solves the problem for the majority, the trial court made no determination that Hellenbrand also made this translation. Were I writing for the majority, I would conclude that Hellenbrand was not required to file proposed findings of fact on a motion for summary judgment. Ultimately, however, the majority reaches the same result I do because it concludes that in any event, American Family is not entitled to summary judgment.

¶ 44. Nor do I agree that we should remand on the issue of whether Hellenbrand incurred compensable damages. We review summary judgment motions de novo. *Cole v. Hubanks*, 2004 WI 74, ¶ 5, 272 Wis. 2d 539, 681 N.W.2d 147. In reviewing the material submitted by the parties, we should decide whether Hellenbrand incurred compensable damages during the time his damaged vehicle was out of use. We have the trial court's record, the same record the trial court will have on remand. By declining to decide this question of law, all we have done is to invite another appeal.

¶ 45. While the amount of damages is subject to differing views, I have no difficulty in concluding that Hellenbrand was damaged during the time his vehicle was being repaired. Hellenbrand might have walked, used another of his automobiles, taken a bus or taxi, borrowed an automobile from a friend, or bought a

temporary replacement vehicle, new or used. In each case his damages might be different, but in each case he would nonetheless be damaged. Juries should settle factual disputes. American Family is free to submit evidence showing little or no damage. Hellenbrand is free to submit evidence showing significant damages. I would not remand to ask the trial court to determine whether Hellenbrand incurred compensable damages, which is a question of law. I would conclude that he could have, and that a jury could separate reality from nonsense in arriving at a dollar figure for those damages.

¶ 46. For these reasons I respectfully concur in part and dissent in part.