Kenneth R. Paulan, Plaintiff-Appellant,
v.
Robert Sigmund, D/B/A R.E.S. Construction, and American Family Mutual Insurance Company, Defendants-Respondents.
No. 03-2051.
Court of Appeals of Wisconsin.
Opinion Filed: March 23, 2005.
Before Brown, Nettesheim and Snyder, JJ.
¶1 PER CURIAM.
Kenneth R. Paulan hired Robert Sigmund to install two skylights in a home and Sigmund damaged the roof of the home by cutting three roof trusses. Paulan appeals from a judgment dismissing Sigmund's insurer, American Family Mutual Insurance Company. He also challenges on appeal the dismissal of his tort claim against Sigmund and the circuit court's determination that damages would be limited to the lesser of the cost of repair or the diminution in value.[1] We conclude that the economic loss doctrine does not preclude possible recovery by Paulan for his tort claim and that the circuit court's coverage decision cannot stand in light of the reinstatement of Paulan's tort claim. We reverse the judgment and order and remand for further proceedings.
¶2 The facts are simple. Pursuant to a written proposal submitted by Sigmund, Paulan hired Sigmund to install two skylights in the family room of the home owned by Paulan. Paulan purchased the skylights, and they were provided to Sigmund for installation. During the installation process, Sigmund cut three roof trusses. Paulan alleges that the cutting of the roof trusses rendered the home structurally unsafe, prevented the completion of shingling the roof, left the home not properly protected from the weather, and as a result, the home could not be occupied for a significant period. Paulan claims that Sigmund breached the terms of the written proposal by failing to perform work in a good and workmanlike manner. He also claims that Sigmund was negligent in cutting the roof trusses. He seeks to recover the cost of repairing physical damage to the ho me and damages for the loss of use of the home and the permanent diminution in value.
¶3 American Family issued a commercial general liability (CGL) policy to Sigmund. American Family denied that there was coverage for Paulan's claims and asserted it had no duty to defend Sigmund. American Family's motion to bifurcate the action so that the coverage issue could be resolved was granted, although the circuit court denied the request to stay the remaining portion of the action.
¶4 Sigmund moved for partial summary judgment to dismiss the negligence claim and to limit damages to the lesser of the cost of repair or the diminution in value.[2] American Family's motion for summary judgment followed months later. The circuit court concluded that there was no coverage because Sigmund intentionally cut the trusses and consequently, there was no accident or "occurrence." American Family was dismissed from the action. After that ruling, the circuit court granted Sigmund's motion to dismiss the negligence claim, based on the economic loss doctrine, and the motion to limit damages.
¶5 The economic loss doctrine preserves the distinction between contract and tort recovery based on the concept that contract law, and not tort law, is better suited for dealing with purely economic loss. Insurance Co. of N. Am. v. Cease Elec. Inc., 2004 WI 139, ¶15, __Wis. 2d __, 688 N.W.2d 462. It works a limitation on damages by confining parties to their contractual remedies when asserting an economic loss claim. Id., ¶24. The application of the doctrine to a set of facts is a question of law we decide independently of the circuit court's decision. Id., ¶15. Here the application of the doctrine is controlled by Cease Electric.[3]
¶6 Cease Electric was hired by Cold Spring Egg Farm, Inc., to wire a ventilation system in a barn. Id., ¶3. After the work was completed, the ventilation system failed and nearly 18,000 chickens died. Id., ¶8. The action brought by Cold Spring and its insurer to recover damages for loss of income and loss of the chickens alleged that Cease Electric was negligent in not wiring the backup thermostat independently and by not testing the system. See id., ¶¶9-10. On appeal, Cease Electric maintained that the negligence action was precluded by the economic loss doctrine. Id., ¶12. Concluding that the contract with Cease Electric was one for services, id., ¶18, the supreme court held that the economic loss doctrine does not extend to claims for the negligent provision of services. Id., ¶52.
¶7 Paulan contracted with Sigmund to provide a servicethe installation of the skylights.[4] The economic loss doctrine does not preclude his claim for negligent provision of that servi ce. We reverse the circuit court's order dismissing the negligence claim.[5]
¶8 Paulan argues that he is entitled to recover both the cost of repair and the diminution in value. The circuit court ruled that he is limited to the lesser of one measure of damages citing WIS JICIVIL 1804 as the law on damages. Hellenbrand v. Hilliard, 2004 WI App 151, ¶23, 275 Wis. 2d 741, 687 N.W.2d 37, concluded that WIS JICIVIL 1804 "is a useful instruction, but one that does not cover all valid damages theories when an item of personal property is repairable." Looking to Hawes v. Germantown Mutual Insurance Co., 103 Wis. 2d 524, 533-34, 309 N.W.2d 356 (Ct. App. 1981), a case permitting damages for repairs and diminution in value occasioned by the collapse of a basement wall, the Hellenbrand court held, "when a plaintiff proves that repairs to personal property have not restored the property to its pre-injury value, and the plaintiff demonstrates that he or she has been or will be harmed by such loss in value, the plaintiff is entitled to damages for the proven lost value" in addition to the cost of repair. Hellenbrand, 275 Wis. 2d 741, ¶25. Paulan offered an appraisal to demonstrate his intent to prove that repairs did not restore his home to its preinjury value. Paulan is entitled to make his proof at trial. We reverse the circuit court's ruling limiting damages. See id., ¶28.
¶9 We turn to the coverage issues presented by American Family's motion for summary judgment.[6] At the outset, we reject Paulan's contention that American Family's concession in the circuit court that it had a duty to defend Sigmund ends the inquiry and prevents an examination of anything other than the complaint. American Family moved for summary judgment determining that, as a matter of law, it does not provide coverage for the claims stated in the complaint. "Summary judgment may be used to address insurance policy coverage issues." Auto-Owners Ins. Co. v. Rasmus, 222 Wis. 2d 342, 348, 58 N.W.2d 49 (Ct. Ap p. 1998). We need not address American Family's duty to defend because it did not refuse to provide a defense for Sigmund and its duty was terminated only after the coverage decision was made.
¶10 We observe that the circuit court's cove rage determination was a narrow one. It addressed the coverage question as if there is only contractual liability to Paulan. The viability of Paulan's tort claim undermines the basis for the circuit court's decision. Specifically, the circuit court concluded that there was no accidental "occurrence" and that the policy excludes coverage for contractual liability for poor workmanship. We confine our decision to that narrow ruling.
¶11 The circuit court's conclusion that there was no "occurrence" covered by the CGL policy was error.[7] Paulan's complaint alleges negligence. Although it may be undisputed that Sigmund intentionally cut the trusses, the resulting structural impairment of the entire roof was not the intended result. In Doyle v. Engelke, 219 Wis. 2d 277, 289-90, 580 N.W.2d 245 (1998), the court recognized that the definition of both "accident" and "negligence" "center on an unintentional occurrence leading to undesirable results." Thus, a policy defining an occurrence as an accident covers an allegation of negligence. Id. See also American Family Mut. Ins. Co. v. American Girl, Inc., 2004 WI 2, ¶45, 268 Wis. 2d 16, 673 N.W.2d 65 (explaining that Doyle held that negligent acts were "accidental" within the definition of a CGL policy); Smith v. Katz, 226 Wis. 2d 798, 819-22, 595 N.W.2d 345 (1999) (recognizing that the Doyle negligence analysis is similar to that set forth in Sheets v. Brethren Mutual Insurance Co., 679 A.2d 540 (Md. 1996), which held that an act of negligence constitutes an "accident" under a liability insurance policy when the resulting damage is an event that takes place without the insured's foresight or expectation).
¶12 It was also error to conclude that the policy excludes contractual liability. In American Girl, 268 Wis. 2d 16, ¶58, the court held that an exclusion of contractually assumed liability applies only "where the insured has contractually assumed the liability of a third party, as in an indemnification or hold harmless agreement; it does not operate to exclude coverage for any and all liabilities to which the insured is exposed under the terms of the contracts it makes generally." The "contractual liability" exclusion in American Family's policy does not negate coverage for Paulan's claims.
¶13 We do not address the other exclusions and provisions advanced by American Family as negating coverage because although those provisions were argued in the circuit court, the circuit court did not specifically address them.[8] Further, the potential application of those provisions is altered by the reinstatement of Paulan's negligent provision of services claim and the recent decision in American Girl.
By the Court.  Judgment and order reversed and cause remanded.
NOTES
[1] A jurisdictional infirmity exists with respect to Paulan's challenge to the partial summary judgment in Sigmund's favor. There is no finality in this action with respect to claims against Sigmund because the breach of contract claim remains pending. Finality with respect to American Family was achieved when American Family was dismissed, but that final judgment does not bring before this court the nonfinal rulings regarding Sigmund. See Culbert v. Young, 140 Wis. 2d 821, 827, 412 N.W.2d 551 (Ct. App. 1987).

An appeal from a final judgment only brings before this court nonfinal rulings adverse to the appellant and favorable to the respondent. WIS. STAT. RULE 809.10(4) (2003-04). Sigmund would not be a respondent to an appeal from the judgment dismissing his insurer since that judgment is adverse to him. Thus, the order dismissing the tort claim is not subject to review in this action. However, because the jurisdictional infirmity did not reveal itself until after the appellate briefs were filed and the issues framed and because the viability of the tort claim impacts coverage, we will grant leave to appeal the nonfinal order dismissing the tort claim and limiting damages. See WIS. STAT. § 808.03(2), WIS. STAT. RULE 809.50.
All references to the Wisconsin Statutes are to the 2003-04 version unless otherwise noted.
[2] As the circuit court noted, because Sigmund did not file any affidavits or evidentiary material in support of his motion, the motion was really one for dismissal under WIS. STAT. § 802.06(2)(a)6., for failure to state a claim upon which relief can be granted. The distinction is of no difference here because our standard of review of a motion to dismiss is similar to that of a motion for summary judgment. Whether dismissal under § 802.06(2)(a)6. is appropriate is a question of law we review de novo, and dismissal should be affirmed only if it appears certain that under no circumstances can the plaintiff recover. Finch v. Southside Lincoln-Mercury, Inc., 2004 WI App 110, ¶10, 274 Wis. 2d 719, 685 N.W.2d 154. Our review of summary judgment requires a de novo application of the same methodology employed by the circuit court, and the controlling principle is that when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law, summary judgment is appropriate. City of Beaver Dam v. Cromheecke, 222 Wis. 2d 608, 613, 587 N.W.2d 923 (Ct. App. 1998).
[3] The circuit court's determination predated both this court's and the supreme court's decision in Insurance Company of North America v. Cease Electric Inc., 2004 WI 139, __ Wis. 2d __, 688 N.W.2d 462, aff'g, 2004 WI App 15, 269 Wis. 2d 286, 674 N.W.2d 886.

American Family moves to strike that portion of Paulan's "Reply Brief To Sigmund" which cites our not-yet-published opinion in Cease Electric. It would have been preferable for Paulan to seek an extension of time for filing his brief until publication was ordered. In any event, the case was ordered published before the appeal was submitted for consideration and the appeal held for the pending supreme court decision in Cease Electric . The motion to strike a portion of Paulan's "Reply Brief To Sigmund" is denied.
[4] We summarily reject Sigmund's attempt to characterize the contract as one where his installation service was merely incidental to Paulan's purchase of the skylights. His reliance on Biese v. Parker Coatings, Inc., 223 Wis. 2d 18, 30, 588 N.W.2d 312 (Ct. App. 1998), is misplaced because there the court was examining the predominant purpose of the contract made with Parker Coatings, which supplied the materials for the defective floor, and not A to Z Epoxy Coating, which was hired to install the floor. Even considering the predominant purpose of the entire transaction with Sigmund, see Linden v. Cascade Stone Co., 2004 WI App 184, ¶14, 276 Wis. 2d 267, 687 N.W.2d 823, review granted, 2005 WI 1, 691 N.W.2d 353 (WI Dec. 15, 2004) (No. 04-0004), there is no dispute that the contract was for the service of installing the skylights.
[5] Because we conclude Cease Electric controls, we need not address Sigmund and American Family's argument that Sigmund owed no duty of care independent of the contract. A member of a profession has the common-law duty to exercise "the standard of care ordinarily exercised by the members of that profession," and the contract does not create the duty of due care but furnishes the occasion for fulfillment of that duty. Milwaukee Partners v. Collins Eng'rs, Inc., 169 Wis. 2d 355, 362, 485 N.W.2d 274 (Ct. App. 1992) (citations omitted).
[6] American Family moves to strike Paulan's "Reply Brief to American Family" on the grounds that Paulan exceeded the page limitation for a reply brief because he also filed a separate reply brief to Sigmund's two respondents' briefs (one by personally retained counsel and the other by counsel retained by American Family). American Family also argues that the reply brief raises issues for the first time. The action was bifurcated in the circuit court, and the appeal reflects that posture in requiring Paulan to reply to distinct components discussed in the three respondents' briefs. The filing of two separate reply briefs was not unreasonable. This court's reference to favoring a single reply brief in an order granting Paulan an extension of time to file his reply brief was made before the procedural posture of the appeal was clear and before a second respondent's brief was filed by Sigmund. Paulan's reply brief to American Family makes a fair response to the arguments raised in American Family's respondent's brief. The motion to strike is denied.
[7] The policy defines an "occurrence" as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions."

Paulan urges this court to apply the two-part test adopted in A.O. Smith Corp. v. Allstate Insurance Cos., 222 Wis. 2d 475, 496, 588 N.W.2d 285 (Ct. App. 1998). The policy in A.O. Smith defined "occurrence" as an accident which "results in personal injury, property damage or advertising liability neither expected nor intended from the standpoint of the insured." Id. at 487-88. Because the definition here is different we do not apply A.O. Smith. However, A.O. Smith may apply to the "expected or intended injury" exclusion if and when that exclusion is considered by the circuit court.
[8] American Family argues that there is no coverage under the "expected or intended injury" and several "business risk" exclusions. It also argues that breach of contract damages do not qualify as "property damage."